IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SERGEANT KATHLEEN RIDDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 04-1201-MPT |
| | ) | |
| THOMAS P. GORDON, individually and in | ) | |
| his official capacity; SHERRY FREEBERY, | ) | |
| individually and in her official capacity; | ) | |
| COLONEL JOHN L. CUNNINGHAM, | ) | |
| RETIRED, individually; COLONEL DAVID | ) | |
| F. MCALLISTER, individually and in his | ) | |
| official capacity; and NEW CASTLE | ) | |
| COUNTY, a municipal corporation | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and

the doctrine of qualified immunity, move to dismiss Plaintiff's Amended Complaint in its

entirety. The reasons for this request are set forth more fully in Defendants' Opening Brief in

Support of Their Motion to Dismiss, filed contemporaneously with this Motion.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ William W. Bowser*
William W. Bowser, Esquire (No. 2239)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6601
Facsimile: (302) 576-3282
E-mail: wbowser@ycst.com
*Attorneys for Defendants New Castle County, Sherry*
*Freebery, Thomas P. Gordon, and Colonel David F.*
*McAllister, each in their official capacities*

CHARLES E. BUTLER, ESQUIRE

*/s/ Charles E. Butler*
Charles E. Butler, Esquire (Bar I.D. 2349)
1224 North King Street
Wilmington, Delaware 19801
Telephone: (302) 655-4100
Facsimile: (302) 655-4212
E-mail: ceb@cebutler.com
*Attorneys for Defendants Sherry Freebery, Thomas P.*
*Gordon, and Colonel David F. McAllister, each in their*
*individual capacity*

and

OBERLY JENNINGS & RHODUNDA, P.A.

*/s/ Kathleen M. Jennings*
Kathleen M. Jennings, Esquire (Bar I.D. 913)
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, Delaware 19899-2054
Telephone: (302) 576-2000
Facsimile: (302) 576-2004
E-mail: kjennings@ojlaw.com
*Attorneys for Defendant Colonel John Cunningham*

Dated:  January 7, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SERGEANT KATHLEEN RIDDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 04-1201-MPT |
| | ) | |
| THOMAS P. GORDON, individually and in | ) | |
| his official capacity; SHERRY FREEBERY, | ) | |
| individually and in her official capacity; | ) | |
| COLONEL JOHN L. CUNNINGHAM, | ) | |
| RETIRED, individually; COLONEL DAVID | ) | |
| F. MCALLISTER, individually and in his | ) | |
| official capacity; and NEW CASTLE | ) | |
| COUNTY, a municipal corporation | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS**

Young Conaway Stargatt & Taylor, LLP
William W. Bowser, Esquire (No. 2239)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6601
Facsimile: (302) 576-3282
E-mail: wbowser@ycst.com
*Attorneys for Defendants New Castle County, Sherry
Freebery, Thomas P. Gordon, and Colonel David F.
McAllister, each in their official capacities*

and

[Signatures continued on following Page]

Charles E. Butler, Esquire
Charles E. Butler, Esquire (Bar I.D. 2349)
1224 North King Street
Wilmington, Delaware 19801
Telephone: (302) 655-4100
Facsimile: (302) 655-4212
E-mail: ceb@cebutler.com
*Attorneys for Defendants Sherry Freebery, Thomas P.*
*Gordon, and Colonel David F. McAllister, each in their*
*individual capacity*

and

Oberly Jennings, and Rhodunda, P.A.
Kathleen M. Jennings, Esquire (Bar I.D. 913)
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, Delaware 19899-2054
Telephone: (302) 576-2000
Facsimile: (302) 576-2004
E-mail: kjennings@ojlaw.com
*Attorneys for Defendant Colonel John Cunningham*

Dated:  January 7, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS ..................................... 1

SUMMARY OF THE ARGUMENT ............................................................ 3

STATEMENT OF FACTS ............................................................................ 5

    A.   Basic Background and Chronology .............................................. 5

    B.   The Allegedly Protected Activities .............................................. 7

    C.   The Allegedly Adverse Actions .................................................. 9

ARGUMENT ................................................................................................ 12

I.      THE 12(b)(6) STANDARD OF LAW ............................................... 12

II.    SERIOUS CONSTITUTIONAL QUESTIONS SHOULD NOT BE
       DECIDED ON THE BASIS OF PLAINTIFF'S SHOTGUN COMPLAINT ... 13

III.   COUNT I FAILS TO ALLEGE AN ACTIONABLE FREE SPEECH
       CLAIM ................................................................................................ 16

    A.   The Free Speech Standard ............................................................ 16

    B.   The Campaign-Related Allegations Do Not Constitute a
        Cognizable Free-Speech Claim .................................................... 17

    C.   The Union-Related Allegations Do Not Constitute a Cognizable
        Free Speech Claim ........................................................................ 19

IV.   COUNT II FAILS TO ALLEGE AN ACTIONABLE RIGHT TO
       PETITION CLAIM ............................................................................ 21

    A.   The Right to Petition Standard ...................................................... 21

    B.   The Union Grievance-Related Allegations Fail to State a
        Cognizable Petition Claim ............................................................ 22

V.    COUNT III FAILS TO ALLEGE AN ACTIONABLE ASSOCIATION
       CLAIM ................................................................................................ 22

    A.   The Right to Freedom of Association Standard ............................ 23

B.   The Campaign-Related Allegations Fail to State a Political
     Association Claim..............................................................................23

C.   The Union-Related Allegations Fail to State an Association Claim............................25

VI.   COUNT IV  FAILS TO ALLEGE A LEGALLY RECOGNIZED BASIS
      FOR HER "RIGHT-TO-VOTE CLAIM ...........................................................28

VII.   COUNTS V AND VI FAIL TO ALLEGE A COGNIZABLE EQUAL
       PROTECTION CLAIM...........................................................................30

A.   Plaintiff's Vague and Confusing Allegations Cannot Support an
     Equal Protection Claim.........................................................................30

B.   Plaintiff's Claim Fails Under Either of the Two Theories
     Recognized in the Third Circuit...............................................................31

C.   Plaintiff's Cannot Allege the Same Set of Facts in Support of Her
     Equal Protection Used to Support Her First Amendment Claim..................................32

VIII.   PLAINTIFF'S ALLEGATIONS RELATING TO THE INDIVIDUAL
        DEFENDANTS ARE INSUFFICIENT TO IMPOSE LIABILITY.................................34

IX.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED
      IMMUNITY.......................................................................................35

A.   Qualified Immunity Is Appropriate Because There Was No
     Violation of A Constitutional Right...........................................................36

B.   Qualified Immunity Is Appropriate Because Plaintiff Cannot
     Present Evidence of a Clearly Established Right at the Time of the
     Alleged Adverse Actions .......................................................................36

     1.   The History of Garcetti Demonstrates that Employee-Made Speech Was
          Not Clearly Established .................................................................38

     2.   Association Claims Have Not Been Extended Beyond the Elrod/Branti
          Framework ..............................................................................39

CONCLUSION....................................................................................40

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Creighton,
 483 U.S. 635 (1987)................................................................. 39

Baraka v. McGreevey,
 481 F.3d 187 (3d Cir. 2007) .................................................. 11

Basile v. Elizabethtown Area Sch. Bd. of Sch. Dirs.,
 61 F. Supp. 2d 392 (E.D. Pa. 1999)..................................... 29

Bennett v. Murphy,
 274 F.3d 133 (3d Cir. 2002) .................................................. 36

Bevis v. Bethune,
 232 Fed. Appx. 212 (4th Cir. 2007)..................................... 36

Boyd v. Ill. State Police,
 384 F.2d 888 (7th Cir. 2004) ................................................. 34

Brammer-Hoelter v. Twin Peaks Charter Acad.,
 492 F.3d 1192 (10th Cir. 2007) ............................................ 25

Branti v. Finkel,
 445 U.S. 507 (1980)............................................................ 22, 24

Brennan v. Norton,
 350, F.3d 399 (3d Cir. 2003) .................................................. 17

Cameron v. Seitz,
 38 F.3d 264 (6th Cir. 1994) .................................................... 37

Ceballos v. Garcetti,
 361 F.3d 1168 (9th Cir. 2004) ............................................... 38

ChemTech Int'l., Inc. v. Chem. Injection Techs.,
 No. 06-3345,
 2007 U.S. App. LEXIS 21697 (3d Cir. Sept. 10, 2007) ..................... 12

City of Cleburne v. Cleburne Living Ctr.,
 473 U.S. 432 (1985)................................................................. 31

City of Pittsburgh v. W. Penn Power Co.,
 147 F.3d 256 (3d Cir. 1998) .................................................. 11

Competello v. La Bruno,
   No. 02-664-DRD,
   2005 U.S. Dist. LEXIS 27878 (D.N.J. July 12, 2005)................................... 27, 28

Conley v. Gibson,
   355 U.S. 41 (1957)..................................................................................... 11

D'Angelo v. Sch. Bd.,
   497 F.3d 1203 (11th Cir. 2007) ................................................................. 25

Digene Corp. v. Ventana Med. Sys., Inc.,
   476 F. Supp. 2d 444 (D. Del. 2007)........................................................... 12

Eichenlaub v. Twp. of Ind.,
   385 F.3d 274 (3d Cir. 2004) ...................................................................... 33

Elrod v. Burns,
   422 U.S. 347 (1976)................................................................................ 22, 24

Farrell v. Planters Lifesavers Co.,
   206 F.23d 271 (3d Cir. 2000) .................................................................... 17

Fogarty v. Boles,
   121 F.3d 886 (3d Cir. 1997) ...................................................................... 15

Foraker v. Chaffinch,
   501 F.3d 231 (3d Cir. 2007) ................................................................... 15, 20

Garcetti v. Ceballos,
   D.C. No. CV-00-1106-AHV (C.D. Cal. 2002) .................................... 38

Garcetti v. Ceballos,
   126 S. Ct. 1951 (2006)........................................................................ passim

Gibson v. Matthews,
   926 F.2d 532 (6th Cir. 1991) ..................................................................... 29

Glenn v. Barua,
   No. 06-2289,
   2007 U.S. App. LEXIS 25384 (3d Cir. Oct. 30, 2007)............................. 32

Grant v. City of Pittsburgh,
   98 F.3d 116 (3d Cir. 1996) ........................................................................ 37

Green v. Barrett,
   226 Fed. Appx. 883 (11th Cir. 2007)......................................................... 36

Guarnieri v. Duryea Borough,
   No. 05-1422,
   2007 U.S. Dist. LEXIS 84580 (M.D. Pa. Nov. 15, 2007) .................................. 19

Harlow v. Fitzgerald,
   457 U.S. 800 (1982)......................................................................................... 36

Hill v.Borough of Kutztown,
   455 F.3d 225 (3d Cir. 2006) ....................................................................... 15, 32

Hope v. Pelzer,
   536 U.S. 730 (2002)......................................................................................... 37

Houlihan v. Sussex Tech. Sch. Dist.,
   461 F. Supp. 2d 252 (D. Del. 2006).................................................................. 15

Hudson v. Coxon,
   149 Fed. Appx. 118 (3d Cir. 2005) .................................................................. 32

Hynson v. City of Chester,
   827 F.2d 932 (3d Cir. 1987) ............................................................................ 37

Jennings v. City of Stillwater,
   383 F.3d 1199 (8th Cir. 2004) ......................................................................... 33

Johnson v. George, No. 05-157 MPT,
   2007 U.S. Dist. LEXIS 42465, (D. Del. June 11, 2007)............................... 15, 37

Jones v. Del. State Police,
   No. 02-1637-KAJ,
   2006 U.S. Dist. LEXIS 46944 (D. Del. July 11, 2006) ..................................... 35

Joynes v. Meconi,
   No. 05-332-GMS,
   2006 U.S. Dist. LEXIS 71296 (D. Del. Sept. 30, 2006).................................... 36

Kasak v. Village of Bedford Park,
   No. 06-5119,
   2007 U.S. Dist. LEXIS 70281 (N.D. Ill. Sept. 18, 2007) ....................... 18, 25, 26

Keenan v. City of Phila.,
   983 F.2d 459 (3d Cir. 1992) ............................................................................ 31

Knox .v City of Portland, No. 06-459-HA
   2006 U.S. Dist. LEXIS 54127 (D. Or. Aug. 3, 2006)........................................ 33

Larsen v. Senate of the Commonwealth,
   154 F.3d 82 (3d Cir. 1998) ......................................................................... 36, 37

Levenstein v. Salafsky,
    414 F.3d 767 (7th Cir. 2005) ............................................................ 32

Magluta v. Samples,
    256 F.3d 1282 (11th Cir. 2001) .............................................. 12, 13, 14

Maldonado v. City of Altus,
    433 F.3d 1294 (10th Cir. 2006) ........................................................ 33

McCann v. Winslow Twp.,
    No. 06-3189,
    2007 U.S. Dist. LEXIS 93594 (D.N.J. Dec. 20, 2007) ....................... 17

McKee v. Hart,
    436 F.3d 165 (3d Cir. 2006) ............................................................. 37

McLaughlin v. Watson,
    271 F.3d 566 (3d Cir. 2001) ............................................................. 37

Mosca v. Cole,
    217 Fed. Appx. 158 (3d Cir. 2006) ................................................... 34

Muzslay v. City of Ocean City,
    238 Fed. Appx. 785 (3d Cir. 2007) ................................................... 15

Nekolny v. Painter,
    653 F.2d 1164 (7th Cir. 1981) ......................................................... 25

Oest v. Ill. Dep't of Corr.,
    240 F.3d 606 (7th Cir. 2001) ........................................................... 18

Oliveria v. Twp. of Irvington,
    41 Fed. Appx. 555 (3d Cir. 2005) ..................................................... 31

Opdycke v. Stout,
    223 Fed. Appx. 125 (3d Cir. 2007) ................................................... 14

P.J. v. Utah,
    No. 05-00739,
    2006 U.S. Dist. LEXIS 40393, (D. Utah 2006) ................................. 29

Perna v. Twp. of Montclair,
    No. 05-4464,
    2006 U.S. Dist. LEXIS 70518, (D.N.J. Sept. 28, 2006) ..................... 20

Phillips v. City of Dawsonville,
    No. 06-16031,
    2007 U.S. App. LEXIS 21730, (11th Cir. Sept. 11, 2007) ................. 38

Piscottano v. Murphy,
    No. 05-3716,
    2007 U.S. Dist. LEXIS 29541 (2d Cir. Dec.21, 2007) ...................................... 28

Pollack v. City of Phila.,
    2007 U.S. Dist 11624, (E.D. Pa. 2007) ............................................................. 32

Pominansky v. JARJ Constr. Corp.,
    No. 07-21530,
    2007 U.S. Dist. LEXIS 73467, (S.D. Fla. Oct. 2, 2007).................................... 15

Pottorf v. City of Liberty,
    No. 06-0246-W-NKL,
    2007 US Dist. LEXIS 70803 (W.D. Mo. Sept. 24, 2007) ................................. 20

Price v. Thompson,
    380 F.3d 209 (4th Cir. 2004) ............................................................................. 16

Purze v. Village of Winthrop Harber,
    286 F.3d 452 (7th Cir. 2002) ............................................................................. 32

Red v. Potter,
    211 Fed. Appx. 82 (3d Cir. 2006)...................................................................... 16

Rode v. Dellarciprete,
    845 F.2d 1195 (3d Cir. 1988) ............................................................................ 19

Romer v. Evans,
    517 U.S. 620 (1996)........................................................................................... 29

Rutan v. Republican Party of Ill.,
    497 U.S. 62 (1990)............................................................................................. 22

Rynn v. Jaffe,
    457 F. Supp. 2d 22 (D.D.C. 2006)..................................................................... 29

San Filippo v. Bongiovanni,
    30 F.3d 424 (3d Cir. 1994)
    cert. denied, 513 U.S. 1082 (1995) ................................................................... 20

Saucier v. Katz,
    533 U.S. 194 (2001)........................................................................................... 36

Savokinas v. Pittston Twp.,
    No. 06-00121,
    2007 U.S. Dist. LEXIS 66979 (M.D. Pa. Sept. 11, 2007) ................................ 11

Sherwood v. Mulvihill,
    113 F.3d 396 (3d Cir. 1997) ........................................................................ 37

Siegert v. Gilley,
    500 U.S. 226 (1991)..................................................................................... 36

Smith v. Frye,
    488 F.3d 263 (4th Cir. 2007) ......................................................... 22, 23, 24

Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.,
    305 F.3d 1293 (11th Cir. 2002) ...................................................... 12, 13, 14

Thomas v. Indep. Twp.,
    463 F.3d 285 (3d Cir. 2006) ........................................................................ 33

Thomas v. Town of Hammonton,
    351 F.3d 108 (3d Cir. 2003) ........................................................................ 18

Van Compernolle v. City of Zeeland,
    No. 06-1904,
    2007 U.S. App. LEXIS 16735 (6th Cir. July 8, 2007).................................. passim

Vannatta v. Keisling,
    151 F.3d 1215 (9th Cir. 1999) ..................................................................... 29

Vargas v. Calabrese,
    634 F. Supp. 910 (D.N.J. 1986) ................................................................... 29

Walsifer v. Borough of Belmar,
    No. 04-5393-DRD,
    2006 U.S. Dist. LEXIS 75601 (D.N.J. Oct. 12, 2006)................................... 32

Watkins v. Bowden,
    105 F.3d 1344 (11th Cir. 1997) ................................................................... 33

Weintraub v. Bd. of Ed. of NYC,
    489 F. Supp. 2d 209 (E.D.N.Y. 2007) ......................................................... 25

Whiting v. Tunica County,
    222 F. Supp. 2d 809 (N.D. Miss. 2002)....................................................... 31

Williams v. Riley,
    481 F. Supp. 2d 582 (N.D. Miss. Mar. 9, 2007) ........................................... 16

Wilson v. Layne,
    526 U.S. 603 (1999)..................................................................................... 37

Wilton v.Mayor & City Council of Balt.,
    772 F.2d 88, 90 (4th Cir. 1985) ............................................................................ 39

**Statutes**

19 Del. C. § 1607 ........................................................................................................ 7

42 U.S.C. § 1973 ....................................................................................................... 29

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).......................................................................................... 2, 1, 19

Fed. R. Civ. P. 8(a, e)................................................................................................ 13

**Constitutional Provisions**

U.S. Const. amend. I, cl. 6 ...................................................................................... 20

U.S. Const. amend. I. .............................................................................................. 4, 5

U.S. Const. amend. IX ............................................................................................ 5

U.S. Const. amend. XIV .......................................................................................... 6

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Kathleen Riddell filed the present matter in this Court on August 27, 2004.[1] Former District Court Judge Jordan stayed the case on December 15, 2004.[2] Plaintiff amended her complaint while the case was stayed.[3] The parties consented to lift the stay, which the Court ordered did on December 17, 2007.[4] The parties also agreed to a briefing schedule with the understanding that Defendants wished to move the Court for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the doctrine of qualified immunity. The present Motion is filed in accordance with that briefing schedule.[5]

The Amended Complaint names Thomas P. Gordon, Sherry Freebery, and Colonel David F. McAllister as defendants in their individual and official capacities.[6] Retired Colonel John L. Cunningham is named only in his individual capacity (collectively, with Gordon, Freebery, and McAllister, the "Individual Defendants").[7] New Castle County ("NCC" or the "County"), is also a named defendant. Plaintiff's claims are derivative of her employment as a sworn police officer in the NCC Police Department ("NCCPD").

Plaintiff's Amended Complaint includes six Counts. The first three Counts are constitutional retaliation claims.[8] Counts I, II, and III allege violations of the Free Speech,[9]

---

[1] (D.I. 1).

[2] (D.I. 13).

[3] (D.I. 15).

[4] (D.I. 24, 25).

[5] (D.I. 21).

[6] (D.I. 15).

[7] (D.I. 15 at ¶6).

[8] (D.I. 15 at ¶¶110, 113, 122); U.S. Const. amend. I.

[9] (D.I. 15 at ¶¶99-110).

Petition,[10] and Association[11] Clauses, respectively.  Count IV asserts a "right-to-vote" claim under the First, Ninth and Fourteenth Amendments.[12]  And Counts V and VI assert equal-protection claims under the Fourteenth Amendment.[13]

Defendants have jointly filed a Motion to Dismiss in which they seek dismissal of Plaintiff's Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and, alternatively, on the grounds of qualified immunity as to the Individual Defendants.  This is Defendants' Opening Brief in Support of Their Motion.

---

[10] (D.I. 15 at ¶¶111-13).

[11] (D.I. 15 at ¶¶114-22).

[12] (D.I. 15 at ¶¶137, 123-37).

[13] (D.I. 15 at ¶¶138-44; 145-49).

## SUMMARY OF THE ARGUMENT

Plaintiff's Amended Complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the doctrine of qualified immunity. On the face of the pleadings, it is clear that:

1.  The Amended Complaint is an extreme example of the typical shotgun complaint. It is filled with meaningless recitations of boilerplate language setting forth legal standards.

2.  Once the onerous task of sweeping aside all of the unnecessary and unrelated factual allegations has been completed, the pleading is a barren shell unable to support even one of the six Counts it contains.

3.  Plaintiff's repeated failure to allege any facts that could plausibly connect the Defendants with the alleged adverse actions requires dismissal of her claims.

4.  Even if the Amended Complaint is not stricken for its glaring pleading omissions, it still does not state a claim on any of the numerous grounds alleged.

5.  Count I does not allege an actionable claim under the Free Speech Clause. Nothing in Plaintiff's allegations relating to her campaign-related speech can be said to extend beyond conclusory allegations and unsupported accusations.  Further, her claim based on her union-related speech is clearly barred by the recent <u>Garcetti</u> decision.  Speech made to other co-workers in the context of the workplace about work-related disputes is the quintessential employee-made speech unprotected by the First Amendment.

6.  Count II fails to assert a claim under the Petition Clause for the same reason.  By filing grievances on behalf of other union members, Plaintiff did not trigger the protections of the Petition Clause.

7.  Count III fails to allege an actionable claim for freedom of association.  Plaintiff's support of her husband does not constitute activity that is constitutionally protected from

retaliation by someone other than her husband's political opponent.  The Fourth Circuit addressed this very issue only one week before the present Motion was filed.  Similarly, the portion of her Association claim that relates to her union activities will suffer the same fate as her union speech pursuant to <u>Garcetti</u>.

  8. Count IV fails to allege even a legally recognized basis upon which Plaintiff could bring a claim for "right-to-vote."

  9. Counts V and VI merely attempt to reallege the same facts that she previously asserted as the basis for her failed speech claims.  The Third Circuit prohibits retaliation claims simply realleged as Equal Protection claims.  Additionally, Plaintiff's allegations fail to meet the standards for an Equal Protection claim as articulated by the Third Circuit because she does not allege membership in a protected class.

  10. The claims alleged against Individual Defendants McAllister and Cunningham fail as a matter of law because they are not specifically alleged to have participated in any of the adverse actions.

  11. Finally, the Individual Defendants are entitled to qualified immunity because Plaintiff cannot establish that the law was well-settled in any of the areas in dispute.

## STATEMENT OF FACTS[14]

Plaintiff Kathleen Riddell is a police officer in the NCCPD. She has been employed with the NCCPD since 1988 and currently holds the rank of Senior Sergeant.[15] For the purposes of the present Motion the relevant time period is July 2002 through February 2004. During that time, Plaintiff alleges that she participated in constitutionally protected activities and, as a result, was subjected to various adverse employment actions.

### A.    Basic Background and Chronology

During the relevant period, Defendant Gordon was the NCC Executive and Defendant Freebery was the NCC Chief Administrative Officer. As Colonel, Defendant Cunningham was the highest-ranking officer of the NCCPD until his retirement in June 2003.[16] Defendant McAllister became Colonel on July 29, 2003.[17]

Each of the six Counts asserted in Plaintiff's Amended Complaint are based on the same set of factual allegations. As discussed in more detail below, Plaintiff claims that she engaged in two categories of protected activities.

The first group of alleged activities occurred in the summer of 2002 during the local primary elections (the "2002 Election").[18] Plaintiff's husband ran for a seat on the NCC Council ("County Council"). Plaintiff contends that she supported her husband in his campaign efforts.

---

[14] For the limited purposes of this Motion, Defendants take all facts and allegations directly from the Amended Complaint. Defendants do so in compliance with Rule 12(b)(6) but make no representation as to the validity of any portion of Plaintiff's allegations.

[15] (D.I. 15 at ¶¶3, 39).

[16] (D.I. 15 at ¶6).

[17] (D.I. 15 at ¶7).

[18] (D.I. 15 at ¶16); Plaintiff's husband's campaign began in July 2002 and ended when he was defeated by Patty Powell in the Democratic primary election on September 7, 2002. (D.I. 15 at ¶¶25, 30, 100, 110, 122 & 24).

The second group of alleged activities relate to Plaintiff's involvement with the NCCPD's police officers' union, FOP Lodge 5 ("Lodge 5" or the "Union"). Plaintiff served as the Union's Grievance Representative from March 2001 until March 5, 2002, when she was appointed Chair of the Grievance Committee. At the same time, she was also elected to the Union's Board of Directors.[19]

Plaintiff alleges that, in response to her participation in the 2002 Election and her involvement with the Union, she was denied: (1) promotion to lieutenant;[20] (2) a transfer to the NCCPD's Southern Patrol Unit;[21] (3) leave;[22] and (4) training.[23]

As alleged in the Amended Complaint, the basic chronology occurred as follows:

Plaintiff engaged in protected activity over a period of eighteen months, from March 2001 through September 7, 2002:

- **March 2001 - March 5, 2002: Protected Activity (Union)**
- **July – Sept 7, 2002: Protected Activity (Election)**

Plaintiff claims that she was subjected to six employment actions beginning three weeks after the last alleged instance of protected activity. She claims that these six actions occurred at random intervals for eighteen months. Three of the employment actions occurred prior to Defendant McAllister's promotion and three occurred thereafter.

- September 24, 2002: Adverse Action (Promotion #1)
- October 9, 2002: Adverse Action (Leave)
- May 12, 2003: Adverse Action (Promotion #2)

---

[19] (D.I. 15 at ¶¶1, 36, 141). The Amended Complaint does not indicate whether Plaintiff currently holds any official position in the Union, or the duration of her prior positions.

[20] (D.I. 15 at ¶¶45-49, 77) (on September 24, 2002 and May 12, 2003).

[21] (D.I. 15 at ¶¶71, 75) (on February 9, 2004).

[22] (D.I. 15 at ¶¶70, 73, 78) (on October 9, 2002, and January 4, 2004).

[23] (D.I. 15 at ¶¶73, 74) (on August 13, 2003, and January 4, 2004).

- July 29, 2003:  McAllister Promoted
- August 13, 2003:  Adverse Action (Training)
- Sept 2003:  Adverse Action (Promotion #3)
- January 4, 2004:  Adverse Action (Leave & Training)
- February 9, 2004:  Adverse Action (Transfer)

**B.      The Allegedly Protected Activities**

Count I is brought pursuant to the Free Speech Clause of the First Amendment.[24]  In all, Plaintiff alleges no more than four sentences of factual allegations in support of the required instances of protected speech.  With respect to the 2002 Election, Plaintiff claims only that she "spoke out on issues of public concern," including "the desirability of the election of her husband" to County Council.[25]

Her allegations of protected speech with respect to the Union are equally deficient. Plaintiff claims that she engaged in protected speech when she "educated FOP members on their rights concerning workers' compensation issues" and when she "prepared and circulated a memorandum summarizing the rights of officers."[26]  Finally, she claims that she "spoke[] out against the Police Department's mistreatment of its officers."[27]  These four sentences comprise every instance of speech as alleged by Plaintiff in her Amended Complaint.

Count II is brought pursuant to the Petition Clause.[28]  Plaintiff alleges that she engaged in protected petitioning activity by "filing and prosecuting grievances on behalf of FOP members"[29]

---

[24] (D.I. 15 at ¶110); U.S. Const. amend. I.

[25] (D.I. 15 at ¶100).

[26] (D.I. 15 at ¶37).

[27] (D.I. 15 at ¶38); <u>but</u> <u>see</u> (D.I. 15 at ¶1) (alleging that Plaintiff spoke out about the "mistreatment and abuse" of union members by "defendants;" (D.I. 15 at ¶100) (speech relating to the mistreatment of police officers by "the administration").

[28] (D.I. 15 at ¶¶111-13); U.S. Const. amend. I.

[29] (D.I. 15 at ¶¶141, 1, 37, 100).

and "vigorously represent[ing] numerous police officers in grievances against their employer."[30]

This is the only activity alleged in support of Count II.

Count III is a freedom-of-association claim.[31]  Plaintiff actually does not assert any facts

to support Count III.  Count III consists of nine total paragraphs.[32]  The first paragraph merely

"repeats and realleges" the preceding paragraphs.[33]  The phrase "protected belief and

association" is used in every one of the Count's remaining eight paragraphs.[34]  That phrase is not

defined, explained, or otherwise put into context with the use of supporting facts anywhere in the

Amended Complaint.

Count IV asserts a "Right-to-Vote" claim pursuant to the First, Ninth, and Fourteenth

Amendments.[35]  This Count is based on Plaintiff's contention that she "is being penalized and

inhibited from exercising her . . . fundamental right to vote."  To support this claim, Plaintiff

provides just a single factual allegation; she claims that she "cast her vote against Patty Powell

and for her husband in the primary."[36]

Counts V and VI are brought pursuant to the Equal Protection Clause of the Fourteenth

Amendment.[37]  Yet again, Plaintiff does not assert any facts to support this Count.  Instead, she

states that the "individual defendants created a classification which only allows the promotion to

---

[30] (D.I. 15 at ¶37).

[31] U.S. Const. amend. I.

[32] (D.I. 15 at ¶¶114-22).

[33] (D.I. 15 at ¶114).

[34] (D.I. 15 at ¶115-22).

[35] (D.I. 15 at ¶¶123-37); U.S. Const. amend. I, IX, XIV.

[36] (D.I. 15 at ¶¶30; 124).

[37] (D.I. 15 at ¶¶138-49); U.S. Const. amend. XIV.

lieutenant to those persons who support the candidates defendants support and to those who refuse to exercise their fundamental First Amendment rights."[38]

### C.    The Allegedly Adverse Actions

As briefly mentioned above, Plaintiff alleges that she was subject to various employment actions in retaliation for her protected activity.  She claims that she applied but was not selected for promotion to lieutenant.[39]  She alleges that promotions were awarded to less qualified officers on September 24, 2002,[40] on May 12, 2003,[41] and in September 2003.[42]

Plaintiff contends that she "was the most qualified for each of these vacancies."[43]  She then proceeds to proselytize the reader with a rambling sermon of her "qualifications."  They are provided in severe detail, piling alleged fact upon alleged fact from as far back in her professional career as 1985.  These "qualifications" are set forth over the course of six lengthy paragraphs and ten single-spaced subparagraphs, each composed of multiple sentences.[44]

Plaintiff also claims that she was denied a transfer to the Southern Patrol Unit.[45]  She alleges that, on November 26, 2002, "she submitted a memo requesting [the] transfer" but that her request "was not addressed" by Defendant Cunningham.[46]  Then, some nine months later, in

---

[38] (D.I. 15 at ¶142).

[39] It is worthy to note that Plaintiff contends that she was passed over for five promotions. (D.I. 15 at ¶45).  In fact, there were only three opportunities for promotion for lieutenant.  (D.I. 15 at ¶105).  Two promotions were twice awarded simultaneously in September 2002 and May 2003.  Plaintiff could not have accepted two lieutenant promotions simultaneously.  Thus, there are actually just three promotions at issue.

[40] (D.I. 15 at ¶69).

[41] (D.I. 15 at ¶69).

[42] (D.I. 15 at ¶77).

[43] (D.I. 15 at ¶48).

[44] (D.I. 15 at ¶¶39-44).

[45] (D.I. 15 at ¶77).

[46] (D.I. 15 at ¶71).

August 2003, Plaintiff allegedly "submitted another request" for a transfer.[47]  Both requests were "due to child care issues."

She claims that "she was not transferred" even though, during "a discussion with Defendant McAllister, . . . he assured Plaintiff that she would be accommodated."[48]  Her final contention regarding the alleged transfer is that, six months after her second request, in February 2004, McAllister transferred a "Sergeant who did not even request a transfer to the SPU."[49]

Next, Plaintiff claims that she was twice denied a request for leave.  First she alleges that, on October 9, 2002, she was denied "FOP leave" to attend an "FOP Convention."[50]  Plaintiff contends that the Union's collective bargaining agreement with the County "indicates" that "leave will be granted as long as staffing allows."[51]

She alleges that "another supervisor told plaintiff that he was willing to cover her shifts" and that Defendant Cunningham was aware of the offer.[52]  Plaintiff claims that she made her second request for leave on January 4, 2004, seeking to take "educational leave in order to take a Spanish course;"[53] and that Defendant McAllister denied the request.[54]

Finally, Plaintiff contends that she was denied a request for polygraph training.[55]  She allegedly submitted a "memo through the chain of command to Defendant McAllister" on

---

[47] (D.I. 15 at ¶75).

[48] (D.I. 15 at ¶75).

[49] (D.I. 15 at ¶75).

[50] (D.I. 15 at ¶70).

[51] (D.I. 15 at ¶70).  Plaintiff does not indicate whether she filed a grievance pursuant to the FOP's collective bargaining agreement with the County.  Nor does she indicate whether she pursued an Unfair Labor Practice Charge pursuant to 19 Del. C. § 1607 of the Delaware Police Officers and Firefighters' Employment Relations Act.

[52] (D.I. 15 at ¶70).

[53] (D.I. 15 at ¶78).

[54] (D.I. 15 at ¶78).

[55] (D.I. 15 at ¶73).

August 13, 2003.[56]  Her request was denied because the NCCPD was experiencing a shortage of

Sergeants.[57]  Some time later, McAllister transferred a patrol Sergeant to be a supervisor in

charge of the polygraphists and the supervisor for the Evidence and Detection Unit.[58]

---

[56] (D.I. 15 at ¶73).

[57] (D.I. 15 at ¶74).

[58] (D.I. 15 at ¶74).  The Amended Complaint does not even allege that this Sergeant was transferred to the Southern Patrol Unit, nor does it indicate when this transfer occurred in relation to Plaintiff's request.

**ARGUMENT**

## I.    THE 12(b)(6) STANDARD OF LAW

Counts I, II, and III of Plaintiff's Amended Complaint are brought pursuant to the First Amendments.  Count IV alleges a violation under the First, Ninth, and Fourteenth Amendments. Counts V and VI allege violations of the Fourteenth Amendment's Equal Protection Clause. Each of the Counts requires the application of different constitutional standards but each is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[59]

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for failure to state a claim.[60]  Dismissal is appropriate if, accepting as true all of the facts alleged in the Amended Complaint, Plaintiff has not pleaded "enough facts to state a claim to relief that is *plausible* on its face."[61]  As a result of the United States Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombly</u>, Plaintiff must now "nudge [her] claims across the line from conceivable to plausible to avoid dismissal thereof."[62]

If facts are not alleged in the Amended Complaint, the Court need not infer or assume them.[63]  If facts alleged are not supported in the Amended Complaint, the Court need not consider or regard them as true.[64]  And the Court should not credit "legal conclusions draped in the guise of factual allegations."[65]

---

[59] Fed. R. Civ. P. 12(b)(6).

[60] <u>Id.</u>

[61] <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007) (abrogating "no set of facts" language found in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)) (emphasis supplied).

[62] <u>See</u> <u>Savokinas v. Pittston Twp.</u>, No. 06-00121, 2007 U.S. Dist. LEXIS 66979, at *5 (M.D. Pa. Sept. 11, 2007) (applying the <u>Bell Atlantic</u> standard).

[63] <u>See</u> <u>City of Pittsburgh v. W. Penn Power Co.</u>, 147 F.3d 256, 263 (3d Cir. 1998).

[64] <u>Baraka v. McGreevey</u>, 481 F.3d 187, 195 (3d Cir. 2007) (the court need not accept as true "unsupported conclusions or unwarranted inferences").

[65] <u>ChemTech Int'l., Inc. v. Chem. Injection Techs.</u>, No. 06-3345, 2007 U.S. App. LEXIS 21697, at *3-4

## II.    SERIOUS CONSTITUTIONAL QUESTIONS SHOULD NOT BE DECIDED ON THE BASIS OF PLAINTIFF'S SHOTGUN COMPLAINT

Plaintiff's Amended Complaint contains 149 paragraphs and 19 subparagraphs. It contains six counts, each asserting a constitutional claim, and each based on the same underlying set of facts and allegations set forth in the first 98 paragraphs. Each count "repeats and realleges" the "allegations of its predecessors." This results in counts that "contain irrelevant factual allegations and legal conclusions."[66] It is, undoubtedly, an example of what this Court has identified as the highly criticized "shotgun complaint." [67]

The result of this drafting style is that each count "is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies," thus totally disregarding "Rule 10(b)'s requirement that discrete claims should be plead in separate counts."[68]

The Amended Complaint includes no less than seventy-one paragraphs of background information.[69] And the allegations set forth in the first two subsections of the background section are not even based on Plaintiff's personal knowledge. Instead, they were lifted directly from a criminal indictment.[70] As early as Paragraph 17, Plaintiff seems to simply stop asserting facts for which she can personally attest and resolves to let the indictment do the work. She states: "What happened next is found in a May 26, 2004, criminal indictment . . ." This method of pleading is detrimental to her claims.

---

(3d Cir. Sept. 10, 2007).

[66] Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).

[67] See Digene Corp. v. Ventana Med. Sys., Inc., 476 F. Supp. 2d 444, 448 n.36 (D. Del. 2007) (describing the plaintiff's pleadings as a "shotgun" complaint) (internal citations omitted).

[68] Magluta v. Samples, 256 F.3d 1282, 1285 (11th Cir. 2001).

[69] (D.I. 15 at ¶¶9-82).

[70] (D.I. 15 at § III(A-B)).

The individual Counts fare no better. Count I, for example, contains nine paragraphs and nine subparagraphs. Only one sets forth any factual allegation in support of the claim.[71] The rest simply recite, in the most mechanical sense, the necessary elements of a free-speech claim.[72]

Count II contains just three paragraphs. The first of the three merely "repeats and realleges" the preceding paragraphs of the Complaint.[73] The attempt to assert a constitutional claim in two paragraphs is as disastrous as one would imagine.

Count IV is even more formulaic. Seven of the fifteen paragraphs allege exactly the same legal conclusion: that Plaintiff was subject to retaliation for exercising her right to vote.[74] And, of the eight remaining paragraphs, only one asserts a material fact: that "Plaintiff voted for her husband instead of Patty Powell" in the 2002 Election.[75]

The Amended Complaint's treatment of Defendants is also indicative of its shotgun status. The pleading is "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the [individual] defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."[76]

---

[71] (D.I. 15 at ¶¶101-10) (setting forth the various legal elements of a First Amendment claim for retaliation)

[72] For example, Paragraph 101 recites the standard for dismissal pursuant to Garcetti: "None of this speech was required by her job duties." And Paragraph 102 recites the "public concern requirement" in a free-speech claim: "By its content, form, and context, at all times plaintiff spoke out about matters of public concern." Paragraph 106 concludes that the necessary causal nexus is demonstrated by "[t]he natural probative force of the evidence."). See Strategic Income Fund, 305 F.3d at 1297, n.12 (admonishing counsel and noting that, although material facts relating to the exact nature of the relationship between the parties were "conspicuously absent," "counsel was certainly mindful" of the legal elements of the claim when drafting the counts).

[73] (D.I. 15 at ¶¶111-13).

[74] (D.I. 15 at ¶¶126, 127, 133-37).

[75] (D.I. 15 at ¶124). Of course, this allegation had been stated already in three earlier paragraphs. (D.I. 15 at ¶¶1, 30, 67).

[76] Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. July 13, 2001).

For example, Count IV alleges that the Individual Defendants were aware that Plaintiff had "exercised her right to vote" in the 2002 Election.  How this is possible, she does not allege. She does not assert that her secret ballot was somehow obtained by the Individual Defendants. She does not allege that the Individual Defendants were present at the voting polls on Election Day in 2002.  And Defendant McAllister did not become Colonel until nearly a year after the election so it is unclear how he could be party to this allegation at all.

The backdrop of Plaintiff's allegations are set forth in a twelve-paragraph section titled, "Election Scheme."[77]  In this section, Plaintiff first alleges that Defendants Gordon and Freebery "sought to dominate . . . and control" NCC government.[78]  Yet, for the rest of the section, she refers only to "Defendants" without differentiating between the individuals.  In Paragraph 15, for example, she alleges that "Defendants chose Patty Powell" as their candidate of choice in the 2002 Election.  Given the fact that McAllister was not promoted until more than a year after the election, it is difficult to imagine how he could be included as a "Defendant" for the purpose of this claim.

Courts have repeatedly expressed a distaste for shotgun complaints because they create "a task that can be quite onerous for the courts,"[79] requiring the "trial court [to] sift out the irrelevancies."[80]  The Amended Complaint fails to comply with the "short and plain statement of the claim" requirement of Rule 8 of the Federal Rules of Civil Procedure.[81]  Serious constitutional issues should not be decided on the basis of this quintessential shotgun pleading.[82]

---

[77] (D.I. 15 at ¶¶13-24).

[78] (D.I. 15 at ¶13).

[79] Opdycke v. Stout, 223 Fed. Appx. 125, 127 (3d Cir. 2007).

[80] Strategic Income Fund, 305 F.3d at 1295 (cited with approval in Opdycke, 223 Fed. Appx. at 127 n.1).

[81] Id. at 1296, n.9 (quoting Magluta, 256 F.3d at 1284-85; Fed. R. Civ. P. 8(a, e)).

[82] Id.

Instead, the Amended Complaint, which fails to allege any discernible claim, should be dismissed in its entirety.[83]

These are clear examples of how Plaintiff has failed to satisfy the knowledge or responsibility elements that are required for causation, as set forth above.

### III.    COUNT I FAILS TO ALLEGE AN ACTIONABLE FREE SPEECH CLAIM

### A.    The Free Speech Standard

The protections available to the speech of a public employee were significantly limited by the Supreme Court in its recent decision, Garcetti v. Ceballos.[84]  In order to be considered protected speech, Plaintiff must sufficiently allege that: (1) she engaged in expressive activity that constituted speech;[85] (2) she did so in her capacity as a citizen as opposed to her capacity as a police officer;[86] and (3) her speech was about a matter of public concern.[87]  If protected speech has been sufficiently alleged, Plaintiff must then show that: (1) the protected speech was a substantial factor in the alleged retaliatory action;[88] and (2) Defendants were not sufficiently

---

[83] See Pominansky v. JARJ Constr. Corp., No. 07-21530, 2007 U.S. Dist. LEXIS 73467, at *4 (S.D. Fla. Oct. 2, 2007) (dismissing with prejudice the plaintiff's "shotgun complaint").

[84] 126 S. Ct. 1951 (2006); Foraker v. Chaffinch, 501 F.3d 231, 241 (3d Cir. 2007) (noting that the Court's decision narrowed the scope of First Amendment claims for public employees).

[85] Fogarty v. Boles, 121 F.3d 886, 888 (3d Cir. 1997) (concluding that the absence of speech required dismissal of the plaintiff's claim).

[86] Garcetti, 126 S. Ct. at 1961 (holding that, unlike citizen speech, speech made pursuant to a public employee's job duties does not receive constitutional protection); Johnson v. George, No. 05-157-MPT, 2007 U.S. Dist. LEXIS 42465, at *12 (D. Del. June 11, 2007) (citing Garcetti, 126 S. Ct. at 1954) ("The First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities").

[87] Muzslay v. City of Ocean City, 238 Fed. Appx. 785, 788 (3d Cir. 2007).

[88] Houlihan v. Sussex Tech. Sch. Dist., 461 F. Supp. 2d 252, 259 (D. Del. 2006) (citing Hill v.Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006)).

justified in their actions.[89]  These are questions of law, properly decided by the Court in a Motion to Dismiss.[90]

Thus, the dispositive question for Count I is whether Plaintiff engaged in protected speech when she spoke out about the "desirability of the election of her husband, of the "mistreatment of police officers by the administration," and when she "educated FOP members" about workers' compensation issues" and other employment "rights."

### B.    The Campaign-Related Allegations Do Not Constitute a Cognizable Free-Speech Claim

Plaintiff cannot "make [her] case on a nod, a wink, and the suggestion that '*we* know what those politicians are like'" or on the mere "public perception of political machinations, innuendo, and speculation."[91]  Instead, Plaintiff must allege sufficient evidence of a causal link between her protected activities and the alleged adverse actions.   Plaintiff has fallen far short of meeting this burden.  Her allegations are so vague as to be nearly incomprehensible.

Causal connection cannot be alleged without, at the very least, an allegation that the defendants were aware that she was engaging in protected activity.[92]  "Knowledge alone, however, does not establish a causal connection" sufficient to impose liability.[93]  Not only must Plaintiff allege that the relevant decision maker *knew* of her activity but she must also produce

---

[89] Garcetti, 126 S. Ct. at 1958.

[90] Hill, 455 F.3d at 241 (finding that whether speech is "protected" is a question of law for the court); Williams v. Riley, 481 F. Supp. 2d 582 (N.D. Miss. 2007) (granting Motion to Dismiss pursuant to Garcetti).

[91] Garrett, 961 F.2d at 634 (emphasis in original) (internal citations omitted).

[92] See Red v. Potter, 211 Fed. Appx. 82, 84-85 (3d Cir. 2006).

[93] Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004).

credible evidence that the decision maker was responsible for the allegedly retaliatory act.[94] Plaintiff has failed to meet these requirements.

Plaintiff does not allege any credible evidence that would show who is responsible for any of the alleged adverse actions. In fact, for many of the adverse actions, she does not even allege who the relevant decision maker was. For example, with respect to the alleged denial of her transfer request, Plaintiff states that she had a "discussion" with Defendant McAllister but fails to allege when it occurred, or in what context. She does not indicate to whom she submitted the request. Nor does she indicate that Defendant Cunningham ever received the request.

Plaintiff has equally failed to allege any evidence of temporal proximity sufficient to demonstrate a causal connection. "There must also be some degree of temporal proximity to suggest a causal connection, and that temporal proximity should be unusually suggestive.[95] "A lengthy time lapse between the [public official's] becoming aware of the protected activity and the alleged adverse action negates any inference that a causal connection exists between the two."[96] Using time to satisfy the causation element requires consideration "with a careful eye to the specific facts and circumstances encountered."[97]

With respect to her request for FOP leave, she fails to even allege when she made the request. Without alleged dates, temporal proximity certainly cannot be considered. Plaintiff does not identify the relevant decision maker. She does not indicate to whom she submitted the request. Nor does she indicate that Defendant Cunningham ever received the request.

---

[94] Brennan v. Norton, 350, F.3d 399, 423 (3d Cir. 2003) (finding that the plaintiff failed to establish a nexus because he failed to show that the defendant was responsible for the adverse transfer).

[95] McCann v. Winslow Twp., No. 06-3189, 2007 U.S. Dist. LEXIS 93594, at *12 (D.N.J. Dec. 20, 2007).

[96] Id. at *16 (internal citations omitted).

[97] Farrell v. Planters Lifesavers Co., 206 F.23d 271, 279 n.5 (3d Cir. 2000).

With respect to the campaign speech, Plaintiff's "protected activity" ended, at the latest, on September 7, 2002, when her husband was defeated in the primary election. Plaintiff's first alleged adverse action occurred three weeks later. The Third Circuit has held that three weeks was not "unduly suggestive."[98] But when framed in light of the adverse actions in sum, which Plaintiff alleges included randomly over an eighteen-month period, involving at least two different decision makers, it becomes truly obvious that Plaintiff has failed to allege the requisite causal connection.[99]

### C.    The Union-Related Allegations Do Not Constitute a Cognizable Free Speech Claim

As with all expressive activity, union-related speech will qualify for the protections of the First Amendment only if it is sufficiently alleged to have occurred outside of the employment context and, then, only if it touches on a matter of public concern.[100] Plaintiff's service as a union representative and board member or other union participation constitute activities derivative of her employment and, therefore, are ineligible for protection pursuant to Garcetti. Further, the personal, employment-related disputes that were the content of the speech were not matters of public concern.[101]

A cursory review of Plaintiff's union-related allegations demonstrates that they occurred pursuant to her job duties and not in her capacity as a citizen. Plaintiff claims that "she spoke

---

[98] Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003).

[99] See Oest v. Ill. Dep't of Corr., 240 F.3d 606, n.8 (7th Cir. 2001) one-year lapse between the employee's protected expression and the employer's actions was, by itself, too attenuated to raise an inference of retaliation).

[100] Van Compernolle v. City of Zeeland, No. 06-1904, 2007 U.S. App. LEXIS 16735, at *17 (6th Cir. July 8, 2007) (internal citations omitted).

[101] Kasak v. Village of Bedford Park, No. 06-5119, 2007 U.S. Dist. LEXIS 70281, at *4-5 (N.D. Ill. Sept. 18, 2007) (dismissing the complaint where it alleged that the plaintiff served as the lead union representative for six years and was actively involved in the formation and recognition of the union where no further substantive facts were alleged).

out" about the "mistreatment" of her *co-workers* by "their *employer*."[102]  This is exactly the type

of employee-made speech contemplated by <u>Garcetti</u>.[103]

Moreover, Plaintiff's failure to allege that any of the Individual Defendants had

knowledge of any specific instance of union activity serves for an additional ground for dismissal

pursuant to Rule 12(b)(6).[104]  Finally, Plaintiff does not describe the nature of the disputes or the

outcome of any of the grievances.  Nor does she allege that any of the Individual Defendants had

knowledge of any specific grievance or grievances.[105]  This impact of these fatal omissions was

explained by the Middle District of Pennsylvania:

> Plaintiff has failed to present evidence regarding the content, form,
> or context of the speech.  Although [] Plaintiff alleges that the
> speech relates to 'Police and Union matters,' . . . there is no
> evidence presented regarding when the speech occurred, the forum
> where the speech occurred, the recipients of the speech, or the
> specific content of the speech. [106]

Thus, Plaintiff's union-related allegations are, as a matter of law, insufficient to support a

plausible finding of free-speech retaliation.

Plaintiff also contends that she "educated" other union members about workers'

compensation and other "rights" inherent to employment with the NCCPD.[107]  Workers'

compensation, like "overtime compensation, retirement benefits, and personal disciplinary

---

[102] <u>Van Compernolle</u>, 2007 U.S. App. LEXIS 16735, at *18 (internal citations omitted) (emphasis supplied).

[103] 126 S. Ct. 1961.

[104] <u>See</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (A defendant in a § 1983 action "must have personal involvement in the alleged wrongs").

[105] See id.

[106] <u>Guarnieri v. Duryea Borough</u>, No. 05-1422, 2007 U.S. Dist. LEXIS 84580, at *27 (M.D. Pa. Nov. 15, 2007).

[107] (D.I. 15 at ¶37).

grievances . . . can only be characterized as internal personnel disputes."[108]  Such internal,

employment-related speech falls squarely within the limitations of <u>Garcetti</u>.[109]  And, without

evidence that Plaintiff's "union-related activity . . .encompassed more than internal personnel

issues," any claim based on her union-related activity must be dismissed.[110]

### IV.    COUNT II FAILS TO ALLEGE AN ACTIONABLE RIGHT TO PETITION CLAIM

#### A.    The Right to Petition Standard

The Petition Clause of the First Amendment protects a public employee who petitions the

"government to fix what, allegedly, government has broken or has failed in its duty to repair."[111]

Thus, to qualify for the protections of the Petition Clause, Plaintiff herself must have actually

sought redress and "actually voice[d] a grievance regarding a particular governmental action

which had taken place or ask the government to fix a particular ongoing problem."[112]  And the

request must have been in the form of a formal petition.[113]

The dispositive question for Count II, then, is whether Plaintiff formally petitioned the

government as a method to seek redress when she represented FOP members in filing grievances

on their behalf.

---

[108] <u>Van Compernolle</u>, 2007 U.S. App. LEXIS 16735, at *19.

[109] <u>See</u> <u>Pottorf v. City of Liberty</u>, No. 06-0246-W-NKL, 2007 US Dist. LEXIS 70803, at *25-26 (W.D. Mo. Sept. 24, 2007).

[110] <u>Van Compernolle</u>, 2007 U.S. App. LEXIS 16735, at *18 (finding that the plaintiff's allegation that the defendants held a "general belief that he was a vocal union member," did not meet the standard for employee-made speech).

[111] U.S. Const. amend. I, cl. 6; <u>San Filippo v. Bongiovanni</u>, 30 F.3d at 439-40, 440 n.18, & 442-43 (3d Cir. 1994), <u>cert. denied</u>, 513 U.S. 1082 (1995).

[112] <u>Perna v. Twp. of Montclair</u>, No. 05-4464, 2006 U.S. Dist. LEXIS 70518, at *24-25 (D.N.J. Sept. 28, 2006) (dismissing the plaintiff's Petition claim where the purpose of her letter was to warn government officials about the possibility of suit but did not request that any specific action be taken).

[113] <u>Id.</u>; <u>see</u> <u>Foraker</u>, 501 F.3d at 236 ("Formal petitions are defined by their invocation of a formal mechanism of redress" such as "lawsuits, grievances, and workers' compensation claims").

### B.    The Union Grievance-Related Allegations Fail to State a Cognizable Petition Claim

Plaintiff's representation of other police officers in their union grievances is not protected petitioning activity.  She does not allege that she herself filed any grievances on her own behalf. And she does not claim that she was affected directly in any way by the outcome of the grievances, other than in her capacity as a union representative. Rather, Plaintiff attempts to assert a petition claim based on grievances filed by other police officers. Such a novel derivative petition claim has not been recognized by the Courts.

Moreover, Plaintiff's utter failure to allege any supporting facts requires the claim to fail for lack of causal connection between her alleged activity and the alleged adverse actions.  For example, she does not identify these alleged beneficiaries of her "representation" by name or rank.  She does not indicate how many police officers she considers to be "numerous."  Nor does she provide any dates or even more general periods of time when the alleged grievances were filed.

### V.    COUNT III FAILS TO ALLEGE AN ACTIONABLE ASSOCIATION CLAIM

Count III asserts a right-to-association claim on two grounds.  First, Plaintiff alleges that her campaign-related activities constituted protected political association.[114]  Second, Plaintiff alleges that her union-related activities constituted protected Citizen-Based Association.  As discussed below, neither claim can be successful as a matter of law.

---

[114] Although Count III of the Amended Complaint does not specify whether Plaintiff is attempting to bring a claim for Intimate Association, wherein she would allege that the claimed retaliation was a result of Plaintiff's marital relationship with Mr. Riddell; or Expressive Association, wherein she would allege that the claimed retaliation was a result of her political beliefs and associations.  But the repeated use of the phrases "political beliefs" and "political party affiliation" seems to indicate an intent to assert a claim for Expressive Association. See (D.I. 15 at ¶¶58-61).   Also supporting this conclusion is the fact that some of the Paragraphs appear to have been drafted to avoid dismissal of a patronage claim, which is tied only to Expressive Association.  See (D.I. 15 at ¶¶58-61, 63, 122) (For example, she reiterates in no less than six paragraphs that a lieutenant in the NCCPD would not qualify for the policy-making exception to the prohibition against making patronage dismissals).

### A.    The Right to Freedom of Association Standard

The right of Expressive Association prohibits the practice of political patronage dismissals, whereby a public employee is discharged solely for supporting the political party in power.[115]  Patronage cases fall into two "primary archetypes:"[116]  (1) cases in which newly elected or appointed officials fire employees who supported the opposition; and (2) cases in which the public employee being fired (a) "is actively associated with a political party or faction (or actively chooses not to be so associated);" and (b) "the individual making the firing decision is a person seeking office."[117]  Thus, the dispositive question for Count III as it pertains to her campaign activities, is whether Plaintiff's association with her husband's campaign constituted protected expressive association.

### B.    The Campaign-Related Allegations Fail to State a Political Association Claim

Following the trail of Plaintiff's bread-crumb pleadings, her Expressive Association claim must be analyzed pursuant to the Elrod-Branti framework.[118]  But the facts asserted do not fit into either of the two archetypes contemplated by Elrod-Branti.  The Fourth Circuit addressed this very issue just one week before the present Motion was filed, in Smith v. Frye.[119]

In Smith, the plaintiff worked as the Clerk of the Magistrate Court, a position that served at the pleasure of the Chief Judge.  During her employment as the Clerk, her son filed to run for

---

[115] See, e.g., Elrod v. Burns, 422 U.S. 347 (1976) and Branti v. Finkel, 445 U.S. 507, 518 (1980) (collectively known as the "Elrod/Branti doctrine") (providing an exception for certain jobs for which party affiliation is an appropriate requirement) (expanded by Rutan v. Republican Party of Ill., 497 U.S. 62, 64-65 (1990)) (extending the protection to include not only politically motivated termination but lesser adverse actions, as well).

[116] Smith v. Frye, 488 F.3d 263, 269 (4th Cir. 2007).

[117] Id.

[118] Elrod, 427 U.S. at 367.

[119] 488 F.3d 263 (4th Cir. 2007) (decided on December 31, 2007).

the office of Circuit Clerk.  Mrs. Smith's son would have to challenge the incumbent Circuit Clerk in the party primary.  The Chief Judge terminated Mrs. Smith approximately one week later.[120]

The Fourth Circuit held that Mrs. Smith's complaint failed to allege a viable association claim.  Smith did not allege a "victory house-cleaning" dismissal where a newly seated official terminates the incumbent employees and replaces them with his own political supporters.[121]  Nor was she "actively associated" with a political party **and** terminated by the person seeking office.[122]

The same result is required under the facts alleged in the Amended Complaint.  Plaintiff does not allege that Defendants were newly seated officials who promoted political supporters instead of her.  Thus, she does not fit into the first of the two "primary archetypes."

Nor does she fit into the second archetype.  Although Plaintiff does allege that she "actively associated" with a political party by way of her "support" of her husband's campaign, she fails to allege the second element—that she was terminated by the person seeking office.[123] Plaintiff alleges that she was subject to various adverse actions at the hands of the Individual Defendants.[124]  But none of the Individual Defendants ran for office in the 2002 Election.  Patty Powell was Mr. Riddell's political rival.

And, although she alleges that the Individual Defendants supported Powell's campaign, political support is insufficient for an associational claim under Elrod-Branti.  The person who

---

[120] Id. at 265-66.

[121] Id. at 269.

[122] Id.

[123] See Smith, 488 F.3d at 269.

[124] For the purposes of the present Motion, Defendants make no inference as to whether Plaintiff's various alleged adverse actions constitute sufficient harm as to qualify for the protections of the Association Clause analysis.

made the decisions to engage in the various adverse actions is not the same as the person who sought office in opposition to Plaintiff's husband.

The extension of the political-patronage doctrine to claims that do not allege "a clear and direct connection among the supervisor's own political association, that of the terminated employee, and the adverse employment action" would distort the doctrine's purpose.[125] The Individual Defendants', i.e., the decision makers', only attachment to the political process is through their supported candidate. To infer that the Individual Defendants were acting on Powell's behalf by punishing Plaintiff for her affiliation with her husband "is not an inferential leap" that is contemplated by the doctrine.[126]

Plaintiff does not allege a first-tier relationship between her husband's political opposition and the decision makers she claims are responsible for the alleged adverse actions. A second-tier relationship, such as Plaintiff alleges in her Amended Complaint is too attenuated to support a viable cause of action under the Association Clause.

### C.    The Union-Related Allegations Fail to State an Association Claim

The Garcetti analysis applies to Plaintiff's association claims based on her union activities.[127] Just as in a free-speech claim, the plaintiff in an association claim must have been acting as a private citizen in order to invoke the protections of the First Amendment. Thus, the dispositive question for Count III as it pertains to her union activities, is whether Plaintiff was

---

[125] Smith, 488 F.3d at 270 (explaining that recognizing such a claim would lead the court "far afield" from the Elrod/Branti line of decisions).

[126] Id. at 271.

[127] See Cindrich v. Fisher, No. 05-1346 2006 U.S. Dist. LEXIS 96193, at *22-23 (E.D. Pa. May 31, 2007) (citing Hill, 455 F.3d at 241-42). See also Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1207-08 (10th Cir. 2007); D'Angelo v. Sch. Bd., 497 F.3d 1203, 1213 (11th Cir. 2007); Kasak, 514 F. Supp. 2d at 1076-77.

acting as a private citizen when she represented union members in "grievances against their employer." The burden on Plaintiff is not insignificant.[128]

The very nature of a formal grievance indicates that it is employee-made speech pursuant to Garcetti.[129] By definition, a grievance requires "proceeding through official channels to complain about unsatisfactory working conditions."[130]

Plaintiff cannot distinguish her situation from "the weight of authority holding that public employees who convey complaints or grievances about a matter pertaining to their official duties," they do so in "their capacities as employees rather than citizens even when the subject matter of their speech touches upon a matter of public concern, and that speech is not protected by the First Amendment."[131]

Further, it is irrelevant whether the plaintiff represented other members in grievance proceedings, filed grievances on behalf of others, or was simply acting on her own behalf.[132] The Sixth Circuit recently ruled on this very issue in Van Compernolle v. City of Zeeland.[133] The plaintiff, a police officer and union president, spoke out on behalf of other union members and worked with management and city officials on "union-related matters including comp time, retirement benefits, vacation time, and personal grievances."[134] He also supported members

---

[128] Nekolny v. Painter, 653 F.2d 1164, 1168 (7th Cir. 1981) ( "[A] disgruntled employee fired for legitimate reasons would not be able to satisfy his burden merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election.").

[129] See Weintraub v. Bd. of Ed. of NYC, 489 F. Supp. 2d 209, 219 (E.D.N.Y. 2007) (finding that, where the employee goes outside of the established institutional channels, the speech is made as a citizen).

[130] See id. at 221 (filing a formal grievance is not protected speech).

[131] Id. at 219.

[132] See Kasak, 2007 U.S. Dist. LEXIS 70281, at *4-5 (granting the defendants' motion to dismiss association claim where the plaintiff was the lead union representative for six years and had filed more than twelve grievances on behalf of union members).

[133] 2007 U.S. App. LEXIS 16735

[134] Id. at *2.

during their grievance procedures and even attended grievance hearings on their behalf.[135]  He

brought a claim asserting First Amendment retaliation for his speech and grievance activity.

The court found that the plaintiff's grievances were not constitutionally protected because

they were related to employee discipline.[136]  The court explained that, "it is clear that internal

grievances that are purely personal in nature are not matters of public concern."[137]  Employee

discipline is a personal matter, arising from the employment relationship.

The plaintiff tried to save his case by arguing that the issues raised in the grievances

impacted officers throughout the department.  The court was not persuaded, finding that

widespread interest in a personal topic does not convert speech on that topic to the speech of an

employee.[138]  "A group effort to gain more overtime is no less an internal personnel dispute than

if it were the effort of one officer."[139]

Other courts have been equally unimpressed with the claim that union-related activity

taken by the plaintiff on behalf of other officers should somehow receive more protection.  For

example, the plaintiff in Competello v. La Bruno wrote to his Governor seeking "assistance in

any way with a problem we are experiencing in the New Jersey Department of Police in regards

to the Sergeant's Exam."  The letter was signed, "Hoboken Police Sergeant Candidates."[140]

To avoid a Garcetti dismissal, the plaintiff argued that the letter implicated matters of

public safety concerns, as well as departmental inefficiency.  And that the reference to the thirty-

---

[135] Id.

[136] Id. at *16.

[137] Id.

[138] Id. at *17-18.

[139] Id.

[140] No. 02-664-DRD, 2005 U.S. Dist. LEXIS 27878, at *13-13 (D.N.J. July 12, 2005).

one other officers demonstrates that the subject matter of the letter had effects far beyond himself.[141]

The District Court rejected the claim explaining that the requests in the letter were "mere extensions" of the plaintiff's private promotion dispute.[142]  Had the Governor responded, it would have benefited the plaintiff and "perhaps the small finite class of sergeant candidates. . . but not the public at large."[143]  Further, the reference to other officers really only served to strengthen the plaintiff's position.[144]  All of these facts demonstrated that the letter was of a personal nature and, therefore, was subject to dismissal.

Just as in Van Compernolle and Competello, here Plaintiff participated in the grievance process in an attempt to resolve employment-related disputes.  She does not allege that any of the "grievances" had any relationship to matters outside the NCCPD.  As with her campaign-related speech, her allegations regarding her grievance activities fail to state a cognizable constitutional claim. Just as there are no facts to support a free-speech claim, Plaintiff's meager allegations also cannot constitute sufficient grounds for a sustainable association claim.[145]

## VI.    COUNT IV  FAILS TO ALLEGE A LEGALLY RECOGNIZED BASIS FOR HER "RIGHT-TO-VOTE CLAIM

Count IV of the Amended Complaint alleges that Defendants "retaliated against Plaintiff for . . . exercising her fundamental right to vote" in violation of the First, Ninth, and Fourteenth

---

[141] Id.

[142] Id.

[143] Id.

[144] Id.

[145] Piscottano v. Murphy, No. 05-3716, 2007 U.S. Dist. LEXIS 29541 (2d Cir. Dec.21, 2007) (explaining that an Association claim will not be established "on less proof than is required for establishment of a violation of the expressly protected right from which it is derived").

Amendments of the United States Constitution.[146]  It is unclear what type of claim Plaintiff is trying to assert in this paragraph.  Right-to-vote cases are brought pursuant to the Voting Rights Act of 1965, as amended,[147] to challenge the constitutionality of "[l]aws which restrict the fundamental right to vote."[148]  Plaintiff has not invoked that Act nor does she challenge any law, regulation, or ordinance.[149]

To the extent that Plaintiff has tried to invoke the Ninth Amendment as a source of legal rights, her claims will be equally unsuccessful.  The Ninth Amendment cannot serve as the basis of a §1983 action[150] "because there are no constitutional rights secured by that amendment."[151]  The Ninth Amendment is a rule of construction, not a substantive basis for a civil rights claim.[152]

Her right-to-vote claim is equally without merit under the Fourteenth Amendment.  The Amended Complaint does not support Plaintiff's allegation that her right to vote has been "unreasonably infringed."  Instead, she repeatedly alleges that she did exercise her right to vote in the 2002 Election.[153]  Plaintiff does not allege that she has been prevented from voting or, in

---

[146] (D.I. 15 at ¶¶126-35,137).

[147] See 42 U.S.C. § 1973 (providing: No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees [for language minority groups]. . .").

[148] Vargas v. Calabrese, 634 F. Supp. 910, 927 (D.N.J. 1986).

[149] See Romer v. Evans, 517 U.S. 620 (1996) (holding unconstitutional a state constitutional amendment that drew classification based on sexual orientation to make gays unequal to everyone else); Vannatta v. Keisling, 151 F.3d 1215 (9th Cir. 1999) (holding unconstitutional a ballot initiative that sought to limit the right to participate in the political process to those who resided with a voting district).

[150] See, e.g., Rynn v. Jaffe, 457 F. Supp. 2d 22, 26 (D.D.C. 2006).

[151] P.J. v. Utah, No. 05-00739, No. 2006 U.S. Dist. LEXIS 40393, at *39 (D. Utah June 16, 2006) (collecting cases); see also Basile v. Elizabethtown Area Sch. Bd. of Sch. Dirs., 61 F. Supp. 2d 392, 403 (E.D. Pa. 1999) (dismissing claim where the plaintiff failed to "identify any abridged fundamental right implicitly guaranteed by the Ninth Amendment").

[152] See, eg., Gibson v. Matthews, 926 F.2d 532, 537 (6th Cir. 1991).

[153] (D.I. 15 at ¶¶126-35).

some way, hindered in exercising her right to vote.  In fact, Plaintiff does not identify whether she has voted or attempted to vote in any local, state, or federal election over the five years that have passed since the 2002 Election.  Based on the allegations in the Amended Complaint, Plaintiff could have voted in every election or in no election since the 2002 Election.  As a result, Plaintiff has failed to sufficiently allege a right-to-vote claim, requiring the dismissal of Count IV.

And, even if Plaintiff had asserted a viable legal basis for her "right-to-vote" claim, her overgeneralized and nondescriptive allegations would require dismissal pursuant to Rule 12(b)(6).  Plaintiff does not identify any time before or after the 2002 Election where she was prevented or hindered from exercising her voting rights.  Nor does she indicate whether she has voted at all since 2002, whether she had any interest or desire to do so, or whether she has ever prevented from doing so.  Thus, her right-to-vote claim would face the same fate as her First Amendment claims due to the absolute absence of factual support.

## VII.    COUNTS V AND VI FAIL TO ALLEGE A COGNIZABLE EQUAL PROTECTION CLAIM

### A.    Plaintiff's Vague and Confusing Allegations Cannot Support an Equal Protection Claim

In support of her Equal Protection claim, Plaintiff alleges that the Individual Defendants "created a classification which only allows promotion to those persons who support the candidates defendants support and to those who refuse to exercise their fundamental First Amendment rights."[154]  As with other allegations in the Amended Complaint, this vague statement is insufficient as a matter of law to support any constitutional claim.

---

[154] (D.I. 15 at ¶142).

Plaintiff does not identify who was involved in or responsible for creating the "classification," how it is defined, how she became aware of it, or how it has affected her.  Nor does Plaintiff identify who, besides herself, is included in or excluded from the "classification."

Additionally, the Amended Complaint fails to allege any actions taken by any of the defendants that may constitute the denial of her Equal Protection rights.  Rather, she alleges that "the individual defendants created a classification which only allows promotion to lieutenant to those persons who support the candidates defendants support and to those who refuse to exercise their fundamental First Amendment rights."[155]

### B.    Plaintiff's Claim Fails Under Either of the Two Theories Recognized in the Third Circuit

Equal protection claims may be pursued under two alternate theories: the "protected-class" theory and the "class-of-one" theory.  The protected-class theory requires Plaintiff to "allege that a state actor intentionally discriminated against [her] because of membership in a protected class."[156]  Here, Plaintiff makes no such assertion.  In fact, she fails to allege identification with any class to support her equal protection claims.[157]

Under this theory, Plaintiff also must allege differential treatment of others similarly situated.  Again, she fails to satisfy this requirement.  The Amended Complaint does not identify any proper comparator who was treated more favorably.[158]  Thus, Plaintiff has failed to allege a sustainable equal protection claim under the protected-class theory.

---

[155] (D.I. 15 at ¶142).

[156] Whiting v. Tunica County, 222 F. Supp. 2d 809, 824 (N.D. Miss. 2002); see, e.g., City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

[157] Oliveria v. Twp. of Irvington, 41 Fed. Appx. 555, 559 (3d Cir. 2005); Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992) (requiring plaintiffs to demonstrate differential treatment on the basis of membership in a protected class).

[158] Hudson v. Coxon, 149 Fed. Appx. 118, 121 (3d Cir. 2005) (upholding dismissal of equal protection claims for failure to allege differential treatment of others similarly situated); Pollack v. City of Phila.,

Plaintiff's allegations are no more sustainable under the class-of-one theory.  To proceed under this theory in the Third Circuit, a plaintiff must allege: (1) the identity of others who are "similarly situated;" (2) that the defendant treated her differently from those who were similarly situated; (3) the defendant did so intentionally; and (3) there was no rational basis for the difference in treatment."[159]  Plaintiff's claims fail on the first prong.

To satisfy the first element, Plaintiff must allege the existence of such individuals with specificity.[160]   And she must allege particular "occasions or circumstances" involving differential treatment.[161]  Generic claims will not suffice.  Plaintiff's Amended Complaint fails to identify any similarly situated individuals who received more favorable treatment, thus preventing her from proceeding under the "class-of-one" theory.[162]

### C.    Plaintiff's Cannot Allege the Same Set of Facts in Support of Her Equal Protection Used to Support Her First Amendment Claim

The facts alleged by Plaintiff in support of her equal protection claim are the same as those alleged in her First Amendment retaliation claim.  This is fatal to her claim.  Retaliation claims may not serve as the predicate for equal protection claims.

---

No. 06-4089, 2007 U.S. Dist 11624, at *4 (E.D. Pa. Feb. 16, 2007) (granting dismissal where plaintiff alleged racial harassment but failed to alleged that he received treatment differently from others).

[159] Hill, 455 F.3d at 239.

[160] Glenn v. Barua, No. 06-2289, 2007 U.S. App. LEXIS 25384, at *16 (3d Cir. Oct. 30, 2007); see also Walsifer v. Borough of Belmar, No. 04-5393-DRD, 2006 U.S. Dist. LEXIS 75601 (D.N.J. Oct. 12, 2006) (dismissing the plaintiff's claim because his proffered comparators were not, in fact, similarly situated); D'Altilio, 2007 U.S. Dist. LEXIS 71414, at *33 ("Without alleging the existence of such individuals and the ways in which they received different treatment, [Plaintiff] cannot establish an equal protection claim based on a class-of-one theory.").

[161] See Pollack, 2007 U.S. Dist. LEXIS 11624, at *4 (dismissing the claim despite the plaintiff's membership in a protected class because he did not "allege that he was treated in any way differently than any other individuals"); Purze v. Village of Winthrop Harber, 286 F.3d 452, 455 (7th Cir. 2002) (plaintiff must demonstrate that she was treated differently than those who are identical in all other respects).

[162] Id. (citing Levenstein v. Salafsky, 414 F.3d 767, 776 (7th Cir. 2005) (affirming dismissal of professor's claim because he failed to identify another similarly situated individual who had been treated differently).

The Third Circuit has explained the policy for this holding period. It cautions against the use of an Equal Protection claim "as a device to dilute the stringent requirements" needed to show violations of other constitutional rights.[163] Hence, the law of this Circuit does not recognize retaliation claims that have been expanded beyond their intended limits.[164] Equal Protection claims such as Plaintiff's will not be permitted to proceed where the facts alleged overlap with the facts asserted in her First Amendment claim.[165]

Here, Counts V and VI are based on the same allegations as are the first four Counts. Hence, the courts' general distaste for shotgun pleadings—by "reincorporating the prior paragraphs" for each Count, Plaintiff has failed to allege any facts that could distinguish between her First and Fourteenth Amendment claims. A "pure or generic retaliation claim [] simply does not implicate the Equal Protection Clause."[166] The right to be free from retaliation "may be vindicated under the First Amendment or Title VII, but not the Equal Protection Clause."[167] Accordingly, Counts V and VI of the Amended Complaint must be dismissed.[168]

---

[163] Eichenlaub v. Twp. of Ind., 385 F.3d 274, 287 (3d Cir. 2004) (stating that "it may be very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach") (internal citations omitted); see also Jennings v. City of Stillwater, 383 F.3d 1199, 1210-11 (8th Cir. 2004) ("[U]nless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors").

[164] Thomas v. Indep. Twp., 463 F.3d 285, 297 (3d Cir. 2006).

[165] Knox .v City of Portland, 2006 U.S. Dist. LEXIS 54127, at *7-9 (D. Or. 2006)

[166] Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997); accord Maldonado v. City of Altus, 433 F.3d 1294, 1308 (10th Cir. 2006).

[167] Boyd v. Ill. State Police, 384 F.2d 888, 898 (7th Cir. 2004).

[168] See Mosca v. Cole, 217 Fed. Appx. 158, 164 (3d Cir. 2006) (holding that the plaintiff's claim failed because he did not "identify a similarly situated individual who was treated differently").

## VIII.   PLAINTIFF'S ALLEGATIONS RELATING TO THE INDIVIDUAL DEFENDANTS ARE INSUFFICIENT TO IMPOSE LIABILITY

The sustainability of a claim against Individual Defendants Cunningham and McAllister must be addressed.  Plaintiff names both defendants in the caption of this action but makes no factual allegations about them in the body of the Amended Complaint.[169]  Plaintiff's failure to allege that Cunningham or McAllister were personally involved in the alleged adverse actions requires that the claims against them be dismissed.[170]

Here, Plaintiff attempts to combine all of the defendants into a single persona for the purpose of imputing liability.  Instead of setting forth allegations specific to each Defendant, Plaintiff refers collectively to the "Defendants" without differentiating between them.[171]

For example, she broadly alleges that, as a result of her "protected petition," "the defendants took adverse action to plaintiff."[172]  As stated above, Plaintiff never identifies any petitioning activity in the Amended Complaint.  If the Court were to infer, which it need not do, that Plaintiff is referring to her involvement with the union grievance process, her allegations become contradictory and illogical.

On one hand, she alleges that "defendants" took adverse actions against her because of her union participation and campaign involvement that occurred between May 2001 and May 2002.  But Defendant McAllister was not promoted to Colonel until more than a year later. Plaintiff makes no allegation that could explain how McAllister could have known about her union and campaign activities.  By making such sweeping generalizations, Plaintiff contradicts

---

[169] See (D.I. 15).

[170] See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("A[n individual defendant in a civil rights action must have personal involvement in the alleged wrongdoing . . ..").

[171] See (D.I. 15 at ¶¶2, 14, 15, 31, 35, 37, 46, 67, 68, 82, 86, 87, 92-98, 105(g-h), 107, 109, 112, 115, 119, 121, 126, 128-33, 135, 141-42, 146-47, 149(b-d, h, k)).

[172] (D.I. 15 at ¶112).

herself in such a way as to create factual impossibilities and inconsistencies within the Amended Complaint.

In Evancho v. Fisher, the Third Circuit dismissed a claim with allegations similar to Plaintiff's.[173]  The state attorney general was named as a defendant, but was mentioned in only one paragraph of the complaint.[174]  That paragraph states that the wrongful action, "was carried out by underlings reporting directly to the attorney general and/or by the attorney general himself."[175]

Plaintiff fails to allege that either Cunningham or McAllister were involved in the decision not to select her for promotion.  To the contrary, she specifically alleges that Defendants Gordon and Freebery "made all personnel and promotion decisions for the County Police Department" and that, "[i]n reality," they made "all personnel and promotion decisions."[176]  Presumably, this includes the decision not to promote Plaintiff.  The failure of the Amended Complaint to allege that Cunningham or McAllister had any direct involvement in the promotion decisions is fatal to her claims against them. [177]

## IX.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The Court makes a two-part inquiry in determining whether the Individual Defendants are entitled to qualified immunity.  First, the court must determine whether the alleged conduct

---

[173] Evancho, 423 F.3d at 353.

[174] Id.

[175] Id. at 350.

[176] (D.I. 15 at ¶9).

[177] See Jones v. Del. State Police, No. 02-1637-KAJ, 2006 U.S. Dist. LEXIS 46944, at *10 (D. Del. July 11, 2006) (dismissing complaint that failed to indicate that two of the named defendants were the "driving force behind the alleged violations") (internal quotations omitted); Joynes v. Meconi, No. 05-332-GMS, 2006 U.S. Dist. LEXIS 71296, at *30-31 (D. Del. Sept. 30, 2006) (dismissing complaint that failed to allege that the defendants were involved in the actions the plaintiff claimed violated his rights).

violated a constitutional right.[178]  If no constitutional violation is established, the inquiry ends.[179]

If a violation occurred, the court then asks, "in the factual scenario established by the plaintiff,

would a reasonable officer have understood that his actions were prohibited."[180]

### A.    Qualified Immunity Is Appropriate Because There Was No Violation of A Constitutional Right

The Individual Defendants are exempt from suit under the first prong of the qualified-

immunity analysis.  As set forth above, the Amended Complaint fails to allege the violation of

any constitutional right.  Neither Plaintiff's involvement in the 2002 Election nor her union

activities constitute constantly protected activities.  Accordingly, qualified immunity should be

awarded to the Individual Defendants.[181]

### B.    Qualified Immunity Is Appropriate Because Plaintiff Cannot Present Evidence of a Clearly Established Right at the Time of the Alleged Adverse Actions

Even if the court found that Plaintiff's constitutional rights were violated, the Individual

Defendants would nonetheless enjoy qualified immunity.  The second prong of the qualified-

immunity analysis asks whether the right was clearly established at the time of the adverse

action.[182]  A constitutional right is clearly established only if its contours are sufficiently clear

"that a reasonable official would understand that what he is doing violates that right."[183]

---

[178] Siegert v. Gilley, 500 U.S. 226, 232 (1991); Larsen v. Senate of the Commonwealth, 154 F.3d 82, 86 (3d Cir. 1998) ("when a qualified immunity defense is raised a court first should determine whether the plaintiff has asserted a violation of a constitutional right at all").

[179] See Saucier v. Katz, 533 U.S. 194, 201 (2001).

[180] Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[181] See, e.g., Bevis v. Bethune, 232 Fed. Appx. 212, 216 (4th Cir. 2007) (granting qualified immunity where the plaintiff failed to show that he engaged in constitutionally protected speech); Green v. Barrett, 226 Fed. Appx. 883 (11th Cir. 2007) (same).

[182] Larsen, 154 F.3d at 87.

[183] See, e.g., Wilson v. Layne, 526 U.S. 603, 615 (1999) (quotations omitted); McKee v. Hart, 436 F.3d 165, 171 (3d Cir. 2006).

This standard requires that there was, "sufficient precedent at the time of the action, factually similar to the plaintiff's allegations," to put Defendants on notice that the conduct is constitutionally prohibited.[184]  Thus, this inquiry "must be undertaken *in light of the specific context of the* case, not as a broad general proposition."[185]  Thus, Plaintiff must present precedent to show that a "reasonable public official would have known that his or her *specific conduct* violated clearly established rights."[186]  "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized."[187]  At this stage in the analysis, Plaintiff has the burden to come forward with evidence that Defendant's conduct violated some clearly established constitutional right.[188]

In the present case, the following rights are at issue: (1) The right of a union member to engage speech relating to employment disputes and to counsel other union members about workers' compensation and other employment-related rights;  (2) The right of a union member to assist other members file internal grievances about personnel disputes; and (3)  The right to oppose a potential candidate without reprise from the candidate's supporters or allies. None of these rights were clearly established at the time of the alleged adverse actions.

---

[184] McKee, 436 F.3d at 171 (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

[185] Id. (quotation omitted) (emphasis in the original) (quoted in McGovern, 2007 U.S. Dist. LEXIS 72591, at *46) (granting qualified immunity because the plaintiff failed to meet his burden where the only case law he cited stood for the proposition that the right to be free from retaliation for filing protected petitions is clearly established); see also Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("in light of pre-existing law, the unlawfulness [of the alleged conduct] must be apparent).

[186] Johnson, 2007 U.S. Dist. LEXIS 42465, at *35 (quoting Grant v. City of Pittsburgh, 98 F.3d 116, 121 (3d Cir. 1996) (emphasis in original).

[187] Cameron v. Seitz, 38 F.3d 264, 272 (6th Cir. 1994) (internal citations omitted).

[188] See, e.g., Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997); Hynson v. City of Chester, 827 F.2d 932, 934 (3d Cir. 1987).

**1.     The History of <u>Garcetti</u> Demonstrates that Employee-Made Speech Was Not Clearly Established**

The history of <u>Garcetti</u> demonstrates that, at the time of the alleged adverse actions, the law was unclear about the right to engage in employment-related.  The same is true with regard to internal grievances about personnel disputes.

Given the procedural history of the <u>Garcetti</u> case, the state of the law regarding employee-speech was far from clearly established at the time of the alleged adverse actions.[189]  Ceballos filed his complaint in the United States District Court for the Central District of California alleging unlawful retaliation based on speech he made in March 2000.[190]  The defendants appealed the decision of the trial court and the Ninth Circuit heard arguments on June 2, 2003.[191]  The decision of the Circuit Court was appealed and the United States Supreme Court granted certiorari.  The Supreme Court heard oral arguments on October 12, 2005, and issued its decision on May 30, 2006.[192]

Thus, the state of law regarding employee-made speech has been in flux at least since the trial court dismissed Ceballos' claims in 2002.[193]  The protections afforded to employee-made speech were not "sufficiently clear that a reasonable official would understand that what he is doing violates that right," until, at the earliest, the Supreme Court issued its decision in 2006.[194]

---

[189] <u>See</u> <u>Phillips v. City of Dawsonville</u>, No. 06-16031, 2007 U.S. App. LEXIS 21730, at *9 n.3 (11th Cir. Sept. 11, 2007) (granting qualified immunity based on the timing of the <u>Garcetti</u> decision because "the preexisting law at the time of the [adverse] decision was unclear on whether the First Amendment would be violated").

[190] <u>Garcetti</u>, 126 S. Ct. at 1956.

[191] <u>Ceballos v. Garcetti</u>, 361 F.3d 1168 (9th Cir. 2004).

[192] <u>Garcetti</u>, 126 S. Ct. 1951.

[193] <u>Garcetti v. Ceballos</u>, D.C. No. CV-00-1106-AHV (C.D. Cal. 2002).

[194] <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987).

Plaintiff's alleged speech occurred during this period of transition, prior to the ruling in <u>Garcetti</u>. The unsettled state of the law requires a finding of qualified immunity.

### 2. Association Claims Have Not Been Extended Beyond the <u>Elrod/Branti</u> Framework

The Fourth Circuit just recently addressed the issue of qualified immunity in a situation where a plaintiff alleges she was subject to retaliation in circumstances other than those contemplated by <u>Elrod/Branti</u>.  There, the court grappled with whether liability could attach given the fact that the particular set of circumstances, which are directly parallel to the ones asserted by Plaintiff, did not fit into the standard <u>Elrod/Branti</u> analysis.  The court, addressing the issue of qualified immunity in this context stated:

> Ms Smith admits that she cannot "identif[y] a case under 42 U.S.C. § 1983 directly on point . . . **and neither can we**. Given this, and our discussion of the cases applying <u>Elrod</u>, any unlawfulness of Judge Frye's actions here in firing Ms. Smith could only have been unapparent, and therefore not likely to be known by a reasonable person.[195]

Additionally, the issue involving the constitutional protections available to a plaintiff's past union speech and association was reviewed by a district court in September 2007.[196]  The court explained that, "It is unclear whether a public employer can demote or fail to promote an employee based on his past protected activity with a union."  The court went on to cite the minimal but conflicting case law on the topic.  Because of the unsettled area of the law, the Individual Defendants are entitled to qualified immunity on this issue.

---

[195] <u>Smith</u>, 488 F.3d at 270 (internal citations omitted).

[196] <u>Kasak</u>, 514 F. Supp. 2d at 1079; <u>compare</u> <u>Wilton v.Mayor & City Council of Balt.</u>, 772 F.2d 88, 90 (4th Cir. 1985); and <u>Cunningham v. Village of Mt. Prospect</u>, 2002 U.S. Dist. LEXIS  2272 (N.D. Ill. 2002).

## CONCLUSION

For the reasons set forth in the brief above, Defendants request that its Motion to

Dismiss be granted and Plaintiff's Amended Complaint be dismissed in its entirety.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ William W. Bowser
_____
William W. Bowser, Esquire (No. 2239)
Margaret M. DiBianca, Esquire (No. 4539)
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor, P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6601
Facsimile: (302) 576-3282
E-mail: wbowser@ycst.com
*Attorneys for Defendants New Castle County,*
*Sherry Freebery, Thomas P. Gordon, and*
*Colonel David F. McAllister, each in their*
*individual capacity*

CHARLES E. BUTLER, ESQUIRE

/s/ Charles E. Butler
_____
Charles E. Butler, Esquire (Bar I.D. 2349)
1224 North King Street
Wilmington, Delaware 19801
Telephone: (302) 655-4100
Facsimile: (302) 655-4212
E-mail: ceb@cebutler.com
*Attorneys for Defendants Sherry Freebery,*
*Thomas P. Gordon, and Colonel David F.*
*McAllister, each in their individual capacity*


OBERLY JENNINGS & RHODUNDA, P.A.

/s/ Kathleen M. Jennings
_____
Kathleen M. Jennings, Esquire (Bar I.D. 913)
Oberly Jennings & Rhodunda, P.A.
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, Delaware 19899-2054
Telephone: (302) 576-2000
Facsimile: (302) 576-2004
E-mail: kjennings@ojlaw.com
*Attorneys for Defendant Colonel John*
*Cunningham*

Date:  January 7, 2008