## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SERGEANT KATHLEEN RIDDELL, :
 :
  Plaintiff, :
 :
  v. : C.A.No. 04-1201-***
 :
THOMAS P. GORDON, individually and in his :
official capacity; SHERRY FREEBERY, :
individually and in her official capacity; :
COLONEL JOHN L.CUNNINGHAM, :
RETIRED, individually; COLONEL DAVID F. :
MCALLISTER, individually and in his official :
capacity: and NEW CASTLE COUNTY, a :
municipal corporation, :
 :
  Defendants. :


## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
CHERYL A. HERTZOG, ESQ.
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
CherylH@NeubergerLaw.com

Dated: February 7, 2008

MARTIN D. HAVERLY, ATTORNEY
AT LAW
MARTIN D. HAVERLY, ESQ. (#3295)
Two East Seventh Street, Suite 201
Wilmington, DE 19801
(302) 654-2255
Martin@HaverlyLaw.com


Attorneys for Plaintiff

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Plaintiff  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    C.    Gordon and Freebery's Total Control of the County Government
        and the Police Department. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.    Defendants' Policy Of Retaliation Against Their Political
            Opponents in the NCCPD.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        2.    Defendants' Policy of Retaliation Against Union Officials . . . . . . . . . . . 2

    D.    Defendants' Illegal Election Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    E.    Plaintiff's Husband Runs Against Powell  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    F.    Plaintiff's Protected Election Campaign Political Speech, Vote,
        Belief and Association.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.    Political Campaigning and Speaking in Support of Her Husband . . . . . . 3

            a.    This Was Not Required by Plaintiff's Job Duties  . . . . . . . . . . . . 3

        2.    Voting For Her Husband. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            a.    This Was Not Required by Plaintiff's Job Duties  . . . . . . . . . . . . 4

        3.    The Election is Lost.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    G.    Defendants' Well Known Animus Towards Union Leaders
        Who Oppose Them. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    H.    Plaintiff's Protected Union Speech, Activity, Belief, Association and
        Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.    Union Grievance Representative and Grievance Committee
            Chairperson  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        a.     This Was Not Required by Plaintiff's Job Duties . . . . . . . . . . . . . 5

    2.     FOP Board of Directors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        a.  This Was Not Required by Plaintiff's Job Duties. . . . . . . . . . . . . . . 5

I.     Defendants Retaliate Against Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    1.     Denial of Five Promotions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    2.     Denial of Union Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    3.     Repeated Denial of Transfers and Training . . . . . . . . . . . . . . . . . . . . . . . 6

    4.     Defendants' Personal Involvement in the Retaliatory Conduct . . . . . . . . . 6

        a.     Gordon and Freebery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        b.     Cunningham . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        c.     McAllister . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

J.     Plaintiff's Job Duties During the Relevant Time-Frame . . . . . . . . . . . . . . . . . . . . 7

    1.     What Plaintiff's Job Duties Did Not Require . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    Rule 8(a)(2)'s "Extremely Lenient" Notice Pleading Standards . . . . . . . . 8

        1.     Fair Notice is All That is Required . . . . . . . . . . . . . . . . . . . . . . . 8

            a.     The Supreme Court's Illustration of Fair Notice . . . . . . . . 9

            b.     This Simplified Pleading System is Intended to
                Focus Litigation on the Merits of a Claim . . . . . . . . . . . . 9

        2.     A Plaintiff Need Not Plead Facts to Match The Evidentiary
            Elements of His Legal Theory . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        3.     A Plaintiff Need Not Plead a Legal Theory At All . . . . . . . . . . 11

4.    All a Complaint Must Do is State the Conduct, Time,
Place and Persons Responsible  . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5.    These "Extremely Lenient" Pleading Standards Apply
in the Civil Rights Context  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.    Rule 12(b)(6) Motion to Dismiss Standards  . . . . . . . . . . . . . . . . . . . . 14

D.    If a Complaint Fails to State a Claim, the District Court
Must Allow Amendment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

E.    The Rule 12(b)(6) Standard of Review When a Complaint
is Silent On Whether a Plaintiff Was Speaking as a Citizen
or as an Employee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

F.    Novel Theories of Law Should Not Be Addressed at
the Motion to Dismiss Stage  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.    PLAINTIFF HAS APPROPRIATELY PLED THE CONDUCT, TIME,
PLACE AND PERSONS INVOLVED IN HER CLAIM TO PLACE THE
DEFENDANTS ON NOTICE OF THE CLAIMS AGAINST THEM.  . . . . . . . 15

A.    The Core of Operative Facts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B.    The Many Legal Claims That Flow From These Facts  . . . . . . . . . . . . . 16

1.    Political Association  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

a.    Evidentiary Standards Do Not Apply at the Motion
to Dismiss Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

b.    The Conduct, Time, Place and Persons Responsible . . . . 17

2.    Union Association  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

a.    Evidentiary Standards Do Not Apply at the Motion
to Dismiss Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

b.    The Conduct, Time, Place and Persons Responsible . . . . 18

3.    Intimate Association  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

a.    Evidentiary Standards Do Not Apply at the Motion
to Dismiss Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

|  |  | b. | The Conduct, Time, Place and Persons Responsible . . . . 19 |

|  | 4. | Free Speech Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19 |

|  |  | a. | Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19 |

|  |  | b. | The Conduct, Time, Place and Persons Responsible . . . . 20 |

|  | 5. | Petition Clause Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20 |

|  |  | a. | Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21 |

|  |  | b. | The Conduct, Time, Place and Persons Responsible . . . . 21 |

|  | 6. | Right to Vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21 |

|  |  | a. | Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22 |

|  |  | b. | The Conduct, Time, Place and Persons Responsible . . . . 22 |

III. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY . . . . . . 22

    A. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B. The Facts Show that Defendants Violated Plaintiff's Constitutional Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    C. Plaintiff's Rights Were Clearly Established . . . . . . . . . . . . . . . . . . . . . 23

        1. Political Association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        2. Union Association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        3. Intimate Association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

        4. Free Speech Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

        5. Petition Clause Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        6. Right to Vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                          **<u>Page</u>**

<u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22,31

<u>Adkins v. Bd. of Educ. of Magoffin County, Kentucky</u>, 982 F.2d 952 (6th Cir. 1993) . . . . . . . 29

<u>Adler v. Pataki</u>, 185 F.3d 35 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>Al Makaaseb General Trading Co. v. U.S. Steel International, Inc.</u>,
     412 F.Supp.2d 485 (W.D.Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Anderson v. Creighton</u>, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>Anderson v. Davila</u>, 125 F.3d 148 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

<u>Assaf v. Fields</u>, 178 F.3d 170 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>Atkinson v. Taylor</u>, 316 F.3d 257 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

<u>Baldassare v. State of N.J.</u>, 250 F.3d 188 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

<u>Bd. Directors of Rotary International v. Rotary Club of Duarte</u>, 481 U.S. 537 (1987) . . . . . . . . 29

<u>Bechtel v. Robinson</u>, 886 F.2d 644 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,16

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11

<u>Bennett v. Murphy</u>, 274 F.3d 133 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>Bennett v. Murphy</u>, 120 Fed.Appx. 914 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>Bennis v. Gable</u>, 823 F.2d 723 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-27,30

<u>Bibbins v. City of Baton Rouge</u>, 489 F.Supp.2d 562 (M.D.La. 2007) . . . . . . . . . . . . . . . . . . . 12

<u>Bieregu v. Reno</u>, 59 F.3d 1445 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>Biggs v. Village of Dupo.</u>, 892 F.2d 1298 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>Boykins v. Ambridge Area Sch. Dist.</u>, 621 F.2d 75 (3d Cir. 1980) . . . . . . . . . . . . . . . . . 12-13,17

<u>Branch v. Federal Deposit Insur. Corp.</u>, 825 F.Supp. 384 (D.Mass. 1993) . . . . . . . . . . . 15,21-22

<u>Branti v. Finkel</u>, 445 U.S. 507 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Brotherhood of R.R. Trainmen v. Virginia ex rel. Va. State Bar, 377 U.S. 1 (1964) . . . . . . 28,31

Buckhead America Corp. v. Reliance Capital Group, Inc.,
178 B.R. 956 (D.Del. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,21-22

Burson v. Freeman, 504 U.S. 191 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Cal. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) . . . . . . . . . . . . . . . . . 31

Clue v. Johnson, 179 F.3d 57 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Compaq Computer Corp. v. Inacom Corp.,
2001 WL 789408 (D.Del. Jul. 12, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11,16-17

Connecticut General Life Insur. Co. v. Universal Insur. Co.,
838 F.2d 612 (1st Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Crawford-El v. Britton, 523 U.S. 574 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

Elrod v. Burns, 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11-13,17

Flickinger v. Harold C. Brown & Co., 947 F.2d 595 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 11

Foraker v. Chaffinch, 501 F.3d 231 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

Fuerst v. Clarke, 454 F.3d 770 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Galli v. N.J. Meadowlands Commission, 490 F.3d 265 (3d Cir. 2007) . . . . . . . . . . . . . 16-17,26

Garcetti v. Ceballos, 547 U.S. 410 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,20,30

Garrity v. New Jersey, 385 U.S. 493 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Good v. Dauphin County, 891 F.2d 1087 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

Goodman v. Pa. Turnpike Commission, 293 F.3d 655 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . 26

Hall v. Pa. State Police, 570 F.2d 86 (3d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13,17

Harlow v. Fitzgerald, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Hicks v. Finney, 770 F.2d 375 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 15,19

Hill v. City of Scranton, 411 F.3d 118 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Hope v. Pelzer, 536 U.S. 730 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Hotel & Restaurant Employees & Bartenders Int'l Union Local 54 v. Read,
        832 F.2d 263 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jones v. Helms, 452 U.S. 412 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Kirkpatrick v. Merit Behavioral Care Corp., 128 F.Supp.2d 186 (D.Vt. 2000) . . . . . . . . . . 11-12

Labov v. Lalley, 809 F.2d 220 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,28

Lawrence v. Texas, 539 U.S. 558 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
        507 U.S. 163 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,13

Leveto v. Lapina, 258 F.3d 156 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Lewis v. Casey, 518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307 (1976) . . . . . . . . . . . . . . . . 21-22,31

McAuliffe v. City of New Bedford, 29 N.E. 517 (Mass. 1892) . . . . . . . . . . . . . . . . . . . . . . . . . 29

McDonald v. Smith, 472 U.S. 479 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 27-28

NAACP v. Button, 371 U.S. 415 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Nagle v. Village of Calumet Park, 2006 WL 3797726 (N.D.Ill. Dec. 18, 2006) . . . . . . . . . . . 20

Navarro v. Coons, 2007 WL 2683824 (D.Del. Sept. 7, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 17

O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712 (1996) . . . . . . . . . . . . . . . . . . . 29

Paff v. Kaltenback, 204 F.3d 425 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Petrario v. Cutler, 187 F.Supp.2d 26 (D.Conn. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Phillips v. County of Allegheny, – F.3d –, 2008 WL 305025 (3d Cir. 2008) . . . . . 8-10,13-14,17

Pi Lambda Phi Fraternity v. Univ. of Pittsburgh, 229 F.3d 435 (3d Cir. 2000) . . . . . . . . . . . . 19

Pickering v. Bd. of Educ., 391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29-30

Price v. Carroll, 2008 WL 170530 (D.Del. Jan. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . 12-13,17

Relational Funding Corp. v. TCIM Services, Inc.,
        2002 WL 655479 (D.Del. April 18, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Reynolds v. Sims, 377 U.S. 533 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Roberts v. Jaycees, 468 U.S. 609 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,29

Robertson v. Fiore, 62 F.3d 596 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Rutan v. Republican Party of Ill., 497 U.S. 62 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 21,30-31

Saucier v. Katz, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

Shefcik v. Village of Calumet Park, 2007 WL 3334329 (N.D.Ill. Nov. 7, 2007) . . . . . . . . . . . 20

Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463 (1979) . . . . . . . . . . . . . . . 28

Springer v. Henry, 435 F.3d 268 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Springer v. Henry, 2004 WL 2127172 (D.Del. Sept. 16, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 30

Springer v. Henry, 2002 WL 389136 (D.Del. March 11, 2002) . . . . . . . . . . . . . . . . . . . . . . . . 30

Stellmaker v. DePetrillo, 710 F.Supp. 891 (D.Conn. 1989) . . . . . . . . . . . . . . . . . . . . . . . 29,31

Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . 25

Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . 8-11,13,16-17

Thomas v. Ind. Township, 463 F.3d 285 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Thornhill v. State of Alabama, 310 U.S. 88 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tillman v. Pepsi Bottling Group, Inc., 2005 WL 2127820 (D.Del. Aug. 30, 2005) . . . . . . . . . . 8

Tolle v. Carroll Touch, Inc., 977 F.2d 1129 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n,
    389 U.S. 217 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,31

United Transp. Union v. State Bar of Mich., 401 U.S. 576 (1971) . . . . . . . . . . . . . . . . . . . 18,28

U.S. v. Lanier, 520 U.S. 259 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-26,32

Wellford v. Battaglia, 343 F.Supp. 143 (D.Del. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Weston v. Pa., 251 F.3d 420 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10,13,17

Williams v. Rhodes, 393 U.S. 23 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Wilson v. Layne, 526 U.S. 603 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,25

Woodruff v. Hamilton Township Public Schools,
    2007 WL 1876491 (D.N.J. June 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,21-22

Wright v. City of Phila., 409 F.3d 595 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Zamboni v. Stamler, 847 F.2d 73 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## Constitution, Statutes, and Rules

U.S. Const., Amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,26,32

Federal Rules of Civil Procedure 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10,13

Federal Rules of Civil Procedure 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Federal Rules of Civil Procedure 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rules of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Federal Rules of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10

Federal Rules of Civil Procedure 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rules of Civil Procedure 84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## NATURE AND STAGE OF THE PROCEEDING

This case was filed on August 27, 2004. (D.I. 1). Following defense representations that any further proceedings would prejudice their Fifth Amendments rights against self-incrimination in the criminal cases against them (D.I. 7-9, 12), this action was stayed on December 15, 2004. (D.I. 13). A First Amended Complaint was filed on July 13, 2007. (D.I. 15). The three year stay was lifted on December 17, 2007. (D.I. 25). Defendants then moved to dismiss the case, asserting issues that should have been asserted three years ago. (D.I. 26).

This is plaintiff's Answering Brief in opposition to defendants' Motions to Dismiss.

## SUMMARY OF THE ARGUMENT

1. Under long established notice pleading standards, plaintiff has appropriately pled the conduct, time, place and persons involved in her claim to place the defendants on notice of the claims against them.

2. It has long been clearly established that defendants could not retaliate against public employees for their political beliefs and speech in support of political candidates or for their union activities.

## STATEMENT OF FACTS

**A. Plaintiff.** Plaintiff is a decorated Senior Sergeant and 19 year veteran of the NCCPD. She has a spotless record and is a diligent employee who has always performed her job in an exemplary manner. (First Amended Compl. ¶¶ 39, 44, 3).

**B. Defendants.** Defendant Gordon was the County Executive of NCC. He is a convicted criminal who pled guilty to committing crimes while holding public office. (¶ 4). Defendant Freebery was the Chief Administrative Officer of NCC. She also is a convicted criminal who has pled guilty to committing crimes of dishonesty and deception while holding

public office. (¶ 5).  Defendant Cunningham was the Colonel of the NCCPD.  Like the other defendants, he also is a convicted criminal, having pled guilty to committing crimes while serving as the highest ranking police officer in NCC.  (¶ 6).  Defendant McAllister is the former Colonel of the NCCPD and is the only defendant without a criminal conviction on his record.  (¶ 7).  Notably however, his initials are found in a federal criminal indictment as committing illegal acts on behalf of his fellow defendants.  (¶ 12).

**C.  Gordon and Freebery's Total Control of the County Government and the Police Department**.  Defendants Gordon and Freebery totally control each and every aspect of NCC government.  They intentionally created an atmosphere of intimidation so that county employees would comply with their orders and directions, even if unlawful.  These defendants also exercised total control over the NCCPD, from personnel and promotion decisions down to the most minute detail of day to day operations.  Defendants Cunningham and McAllister regularly committed illegal acts on their behalf out of fear of the consequences of refusing their illegal requests.  (¶¶ 9-13).

**1.  Defendants' Policy Of Retaliation Against Their Political Opponents in the NCCPD.**  Defendants had a policy, practice and custom of retaliating against their political opponents within the NCCPD.  (¶ 9).

**2.  Defendants' Policy of Retaliation Against Union Officials.**  Defendants also had a policy, practice and custom of retaliating against any FOP Lodge 5 union official who stood in their way by standing up and speaking out on behalf of the rights of union members. (¶¶ 9, 35).

**D.  Defendants' Illegal Election Scheme.**  To consolidate and expand their control, in 2002 defendants sought to take control of County Council.  As part of this effort, defendants

handpicked Patty Powell to run as their chosen candidate for Council in District 6.  To ensure her election and control of NCC government, defendants threw their entire campaign and political apparatus behind Powell's election campaign. (¶¶ 13-15).

To guarantee the outcome of Powell's campaign, in violation of state law, defendants Gordon and Freebery: (1) illegally converted and stole NCC resources and used them to support Powell's campaign; (2) illegally forced numerous county police officers and other county employees to campaign for Powell during working hours; and (3) illegally forced numerous Executive Assistants to work more than 900 hours on the campaigns of Powell and another candidate, also during working hours. (¶¶ 17-23).

**E.  Plaintiff's Husband Runs Against Powell.**  In the way of defendant's illegal scheme stood plaintiff's husband, a 20 year retired NCC police officer and a Democrat who was not controlled by defendants.  In July 2002, he chose to oppose Powell in the Democratic primary and stand in the way of defendants' goal to control County Council.  His campaign platform included the issues of independence from the corrupt executive branch, the need for responsible development and the need for greater public services below the Canal. (¶ 16).

**F.  Plaintiff's Protected Election Campaign Political Speech, Vote, Belief and Association.**

**1.  Political Campaigning and Speaking in Support of Her Husband.**  Plaintiff actively and publicly campaigned on her husband's behalf and spoke out about why her husband was the better candidate, including his independence from the illegal machinations of Gordon and Freebery.  (¶¶ 25-30).  Defendants were aware of plaintiff's campaigning and were angered and antagonized by it.  (¶¶ 29, 67-68, 30, 104, 116).

**a.  This Was Not Required by Plaintiff's Job Duties.**  As was

3

specifically pled in the Complaint, none of this protected activity was required by plaintiff's job duties or responsibilities as a sergeant and patrol supervisor in the NCCPD. (¶¶ 100-101, 43). Instead, plaintiff did this "in her private capacity as a citizen." (¶ 100).

**2. Voting For Her Husband.** Plaintiff also voted for her husband in the election. Defendants knew this and were angered and antagonized by it. (¶¶ 30, 67-68, 125, 116).

**a. This Was Not Required by Plaintiff's Job Duties.** As was specifically pled in the Complaint, none of this protected activity was required by plaintiff's job duties or responsibilities as a sergeant and patrol supervisor in the NCCPD. (¶¶ 100-101, 43). Instead, plaintiff did this "in her private capacity as a citizen." (¶ 100).

**3. The Election is Lost.** Because of defendants' illegal support and contributions in violation of state law, plaintiff's husband lost the September 2002 election to defendants' handpicked candidate. (¶ 31).

**G. Defendants' Well Known Animus Towards Union Leaders Who Oppose Them.**

Defendants also have a well known and historical animus towards FOP Lodge 5 leaders who speak out against their administration or on behalf of the interests of their union members. (¶ 35). As a result of this historic animus, defendants had a policy, custom and practice of retaliating against any union officials who stood in their way by standing up and speaking out on behalf of the rights of union members. (¶¶ 9, 35).

**H. Plaintiff's Protected Union Speech, Activity, Belief, Association and Petition.**

**1. Union Grievance Representative and Grievance Committee Chairperson.**

Beginning in March 2001 and continuing thereafter, plaintiff served as a union grievance representative and later became the Chairperson of the Union Grievance Committee. In these

positions, plaintiff vigorously represented numerous police officers in their grievances against

the NCCPD. She spoke out against the NCCPD's mistreatment of its officers and recommended

legal representation to officers who needed such representation, all against the wishes of the

defendants. She educated FOP members on their rights concerning workers' compensation and

other issues (including the drafting and circulation of a memo detailing officers' rights). (¶¶ 36-

38). Defendants knew about and were angered and antagonized by plaintiff's union activities

and associations. (¶¶ 67-68, 104).

> **a. This Was Not Required by Plaintiff's Job Duties.** As was
specifically pled in the Complaint, none of this protected activity was required by plaintiff's job
duties or responsibilities as a sergeant and patrol supervisor in the NCCPD. (¶¶ 100-101, 43).
Instead, plaintiff did this "in her private capacity as a citizen." (¶ 100).

> **2. FOP Board of Directors.** In March 2002, plaintiff also began service on the
Board of Directors of FOP Lodge 5. There, she participated in actively protecting the interests of
union members against management. (¶¶ 36-38). Defendants knew about and were angered and
antagonized by all of plaintiff's union activities and associations. (¶¶ 67-68, 104).

> **a. This Was Not Required by Plaintiff's Job Duties.** As was
specifically pled in the Complaint, none of this protected activity was required by plaintiff's job
duties or responsibilities as a sergeant and patrol supervisor in the NCCPD. (¶¶ 100-101, 43).
Instead, plaintiff did this "in her private capacity as a citizen." (¶ 100).

**I. Defendants Retaliate Against Plaintiff.** In keeping with their well known policy of

retaliation against all who opposed them in the political process or in union dealings, defendants

then retaliated against plaintiff. (¶¶ 67-81, 46-49).

> **1. Denial of Five Promotions.** From September 2002 until September 2003,

plaintiff applied for five promotions to the rank of Lieutenant.  Despite being the most qualified candidate for each promotion, "defendants filled [these] positions with less qualified officers in retaliation for plaintiff's protected activities."  The first of these denials occurred mere weeks after the election in which she actively campaigned for her husband against defendants' handpicked candidate. (¶¶ 45-49, 69, 77).

      **2.  Denial of Union Leave.**  In violation of their explicit obligations under the union contract, in October 2002, defendants denied plaintiff leave to attend the FOP state convention  and continued to tamper with union leave policies.  (¶¶ 70, 72, 79-81).

      **3.  Repeated Denial of Transfers and Training.**  Defendants repeatedly denied plaintiff's numerous transfer and training requests.  (¶¶ 71, 73-75, 78).

      **4.  Defendants' Personal Involvement in the Retaliatory Conduct.**  The Complaint also pleads that each defendant was personally involved in the retaliatory actions taken against plaintiff.

        **a.  Gordon and Freebery.**  Defendants Gordon and Freebery made all the personnel and promotion decisions in the NCCPD and, when they so choose, also exercised total control over day to day operations.  (¶ 9).  They were involved in the decision to deny plaintiff each of the five promotions to Lieutenant.  (¶¶ 46, 105).

        **b.  Cunningham.**  Defendant Cunningham was the Colonel of the NCCPD until June 2003 and is sued for actions he took against plaintiff prior to his retirement. (¶ 6).  Cunningham, and the other defendants (other than McAllister),[1] were involved in the decision not to promote plaintiff to the first four vacancies.  (¶ 46, 105).  Cunningham was

---

[1]  As noted in the First Amended Complaint, McAllister is only being sued for his actions after he assumed command in July 2003. (¶ 7)

involved in numerous additional personnel decisions adversely affecting plaintiff - including denying and refusing to act on transfer and leave requests. (¶¶ 70-72, 105).

       **c. McAllister.** Defendant McAllister succeeded Cunningham as Colonel in July 2003 and is sued for actions he took against plaintiff after that time. (¶ 7). He, Gordon and Freebery denied plaintiff promotion to the fifth Lieutenant vacancy in September 2003. (¶¶ 77, 105). McAllister also was involved in numerous additional personnel decisions adversely affecting plaintiff - including denying numerous transfers, training and leave requests. (¶¶ 73-81, 105).

       **J. Plaintiff's Job Duties During the Relevant Time-Frame.** Plaintiff's job duties were specifically pled and delineated in the Complaint. During the time period relevant to this case, 2001-2004, plaintiff was a Patrol Supervisor in the Central, then in the Northern District of NCC. (¶ 43). Her job as Patrol Supervisor required her to supervise patrol units, manage part I crime scenes, including but not limited to, homicide, barricaded subjects, suicide and suspicious deaths, arsons, and rapes and also serve as acting lieutenant when required. (¶ 43).

       **1. What Plaintiff's Job Duties Did Not Require.** Plaintiff's job duties and responsibilities in the NCCPD did not require her to campaign for her husband's election to County Council, oppose the mistreatment of police officers as a union official or file and prosecute grievances on behalf of FOP members. (¶¶ 101, 100)

**ARGUMENT**

**I.     STANDARD OF REVIEW.**

    **A. Introduction.** The defense motion betrays a fundamental misunderstanding of the procedural posture of this case as well as the standard of review under which the Complaint must be examined. We are not in any post-trial briefing stage of the case, analyzing the most minute

7

detail of evidence in a trial record.  Cf. Fed.R.Civ.P. 59.  We are not at the summary judgment

stage, scouring the discovery record for evidence to match the prongs of our legal theories.  Cf.

Fed.R.Civ.P. 56.  Instead, we are at the motion to dismiss stage under Rule 12(b)(6) where Rule

8(a)(2)'s notice pleading standards apply.  As our District has repeatedly explained, "[w]hen

deciding a motion to dismiss for failure to state a claim, one must read Fed.R.Civ.P. 12(b)(6) in

conjunction with Fed.R.Civ.P. 8(a), which establishes the requirements for adequately pleading a

claim in federal court."  Tillman v. Pepsi Bottling Group, Inc., 2005 WL 2127820, *6 (D.Del.

Aug. 30, 2005); Relational Funding Corp. v. TCIM Services, Inc., 2002 WL 655479, *3 (D.Del.

April 18, 2002).  In a comprehensive recent opinion, the Third Circuit recognized the same.

Phillips v. County of Allegheny, – F.3d –, 2008 WL 305025, *3-7 (3d Cir. 2008).  Reading Rule

12 in conjunction with Rule 8 is fatal to the defense claim that plaintiff has not adequately pled

the elements of his legal theories.

**B.  Rule 8(a)(2)'s "Extremely Lenient" Notice Pleading Standards.**

     **1.  Fair Notice is All That is Required.**  For more than fifty years, the United

States Supreme Court has repeatedly and explicitly rejected the heightened pleadings standards

defendants seek to foist upon the Court and instead unanimously has reaffirmed its long time

holding that Fed.R.Civ.P. 8(a)(2) indeed means what it very clearly says and that the Complaint

must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests."  Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002); accord Bell Atlantic

Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007); Leatherman v. Tarrant County Narcotics

Intelligence and Coordination Unit, 507 U.S. 163, 165-68 (1993);  Evancho v. Fisher, 423 F.3d

347, 351-353 (3d Cir. 2005).  The Third Circuit has explained that this is an "extremely lenient"

standard.  Weston v. Pa., 251 F.3d 420, 430 (3d Cir. 2001).  As the Court recently noted, motion

to dismiss pleading standards "can be reduced to this proposition: Rule 8(a)(2) has it right."

Phillips, 2008 WL 305025, *7.  The same Court recently warned against taking "an unduly

crabbed reading of [a plaintiff's] complaint."  Id. at *9.

      **a.  The Supreme Court's Illustration of Fair Notice.**  The nature and

extent of these "extremely lenient," id., standards of notice pleading are best illustrated by review

of the example cited by the Supreme Court itself in the context of addressing a Rule 12(b)

motion to dismiss.  In Swierkiewicz, the Court explained that Rule 8(a)'s simplified notice

pleading standards are "exemplified by the Federal Rules of Civil Procedure Forms" which are

"sufficient under the rules" in all respects.  534 U.S. at 513 n.4; accord Fed.R.Civ.P. 84.  The

Supreme Court looked to Form 9, which sets forth a form complaint for negligence which states

in relevant part:

> On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway.

Swierkiewicz, 534 U.S. at 513 n.4.  Under Rule 8(a)'s notice pleading standard, this one sentence

allegation on liability is sufficient to withstand a Rule 12(b) motion to dismiss.  Id.  In the same

way, the first paragraph of plaintiff's Complaint herein is itself sufficient to withstand the

defense motion.  It states:

> Plaintiff reported to federal prosecutors, law enforcement officials and the grand jury alleged wrongdoing in November 2001 by defendant Freebery who abused her authority to protect her son from an ongoing criminal investigation into a hit-and-run motor vehicle offense.  He also reported that while she was County Police Chief defendant Freebery shut down the Police Department's entire Detective Division for a full work day and forced a majority of detectives while on duty to campaign in 1996 for State Senator Thomas Sharp and for defendant Gordon who was campaigning for election to County Executive.  As a result plaintiff three times has been denied promotion to the rank of police Captain.

(¶ 1).  These allegations alone are sufficient to withstand the defense motion.

**b. This Simplified Pleading System is Intended to Focus Litigation on the Merits of a Claim.** As the <u>Swierkiewicz</u> Court explained, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," 534 U.S. at 514, rather than move to dismiss as occurred <u>Swierkiewicz</u>, <u>id.</u> at 508 n.1, the proper approach is to instead "move for a more definite statement under Rule 12(e) before responding." <u>Id.</u> at 514. Once the defendant is on notice of the claims against them, "claims lacking merit may be dealt with through summary judgment under Rule 56." <u>Id.</u>

As the Supreme Court explained, this is the proper approach because the "liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." <u>Id.</u> Notice pleading "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." <u>Id.</u> at 512.

**2. A Plaintiff Need Not Plead Facts to Match The Evidentiary Elements of His Legal Theory.** As the Third Circuit held just two weeks ago, "[s]tandards of pleading are not the same as standards of proof." <u>Phillips</u>, 2008 WL 305025, * 18. As the same Court has previously explained, "[c]omplaints need not plead law or match facts to every element of a legal theory." <u>Weston</u>, 251 F.3d at 429. In our District's words, "the federal rules do not require the plaintiffs to plead law or match facts to every element of a legal theory." <u>Compaq Computer Corp. v. Inacom Corp.</u>, 2001 WL 789408, *3 (D.Del. July 12, 2001) (internal punctuation omitted). The Supreme Court has held the same. <u>See</u> <u>Swierkiewicz,</u> 534 U.S. at 511-12 (rejecting the defense claim that a plaintiff need even plead the elements of a prima facie employment discrimination claim, because that is an evidentiary standard, not a pleading

standard).[2]  In the same way, plaintiff is not required to plead each prong of any relevant

evidentiary paradigms required to prove his case.  Rather than plead evidentiary elements, the

Third Circuit has "held that a civil rights complaint is adequate where it states the conduct, time,

place, and persons responsible." Evancho, 423 F.3d at 353.  In other words, all that is required is

fair notice of the claim asserted, which as the defense statement of facts reveals, the Complaint

clearly and abundantly provides.[3]

     **3.  A Plaintiff Need Not Plead a Legal Theory At All.**  In the same way, "Rule

8(a)(2) does not require a claimant to set forth any specific legal theory justifying the relief

sought on the facts alleged." Compaq, 2001 WL 789408, *3; accord Kirkpatrick v. Merit

Behavioral Care Corp., 128 F.Supp.2d 186, 191 (D.Vt. 2000).  As the Third Circuit has

explained, "[u]nder the federal rules, as long as the issue is pled, a party does not have to state

the exact theory of relief in order to obtain a remedy." Bechtel v. Robinson, 886 F.2d 644, 649

(3d Cir. 1989).[4]  This is because a "pleading is a vehicle to facilitate a proper decision on the

merits and not a game of skill in which one misstep by counsel may be decisive." Id.  As one

---

     [2]  Notably, in Twombly, 127 S.Ct. at 1973, the Supreme Court declined to overrule
Swierkiewicz and its application in the civil rights context.  In so holding, the Court explained
that Swierkiewicz reaffirmed the longstanding rules of pleadings by rejecting the use of
"heightened pleading standard[s]" in civil rights cases.  Id.  As the Third Circuit recently
explained, even after Twombly, "the notice pleading standard of Rule 8(a)(2) remains intact."
Phillips, 2008 WL 305025, *5.

     [3]  Of course, defendants cannot have it both ways.  On the one hand, they complain that
plaintiff has not alleged "sufficient evidence."  (See, e.g. OB at 17).  On the other hand, they also
contradictorily complain that plaintiff alleged too much evidence.  (OB at 13-16).

     [4]  Accord Al Makaaseb General Trading Co. v. U.S. Steel International, Inc., 412
F.Supp.2d 485, 500 (W.D.Pa. 2006); see Connecticut General Life Insur. Co. v. Universal Insur.
Co., 838 F.2d 612, 622 (1st Cir. 1988) ("Under Rule 8 ... [it] is not necessary to set out the legal
theory on which the claim is based."); Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 600
(2d Cir.1991) (federal pleading is by statement of claim, not by legal theory).

court has explained,

> a complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations.

Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir.1992) (internal punctuation omitted). In light of this, it is not surprising that "claims need not specify in exact detail every possible theory of recovery, so long as they give fair notice of the claims to the defendants." Bibbins v. City of Baton Rouge, 489 F.Supp.2d 562, 577 (M.D.La. 2007). Key here is fair notice of the claim. The legal theories themselves may change or develop during the discovery process as the facts play out. "The legal theories upon which a plaintiff will rely at trial may be developed during the discovery process, refined at pretrial conferences, and tested by motion for summary judgment." Kirkpatrick, 128 F.Supp.2d at 191.

**4. All a Complaint Must Do is State the Conduct, Time, Place and Persons Responsible.** As stated above, rather than plead specific facts and legal theories, the Third Circuit has repeatedly "held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." Evancho, 423 F.3d 347; see, e.g. Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pa. State Police, 570 F.2d 86, 89 (3d Cir. 1978); Price v. Carroll, 2008 WL 170530, *9 (D.Del. Jan. 17, 2008).

In Hall, the Third Circuit reversed the district court's Rule 12(b)(6) dismissal of a civil rights complaint. 570 F.2d at 88. The Court held that the complaint was sufficient to withstand the 12(b)(6) attack because -

> the plaintiff has alleged the conduct violating his rights (racially discriminatory activity), time (March 17, 1976), place (King of Prussia) and those responsible (various state and bank officials).

Id. at 89. As a result, the Court held that the complaint "is sufficiently precise to give notice of

the claims asserted and withstand the defendants' challenge to its filing." Id.  Similarly, in

Boykins, the Third Circuit affirmed this precedent, holding that a civil rights complaint which

alleged the conduct (racially motivated expulsion from the drill team), the time (1975), the place

(Ambridge Area School District high school) and the persons responsible (the coach and school

administrators), was legally sufficient and that "no more is required."  621 F.2d at 80.  This is

still the law today. See Evancho, 423 F.3d 347 (citing Hall and Boykins); Price, 2008 WL

170530, *9 (same).  Accordingly, as the Evancho opinion makes clear, to provide fair notice

under Rule 8(a), a civil rights complaint merely must state the "conduct, time, place and persons

involved.  423 F.3d at 553.

  5.  **These "Extremely Lenient" Pleading Standards Apply in the Civil Rights**

**Context.**  As the Third Circuit has explained, "[d]iscrimination and other civil rights claims are

clearly subject to notice pleading."  Weston, 251 F.3d at 429.  Just two weeks ago, our Circuit

applied these notice pleading standards in the civil rights context.  See Phillips, 2008 WL

305025.  "[I]n federal civil rights cases, a claimant does not have to set out in detail the facts

upon which a claim is based, but must merely provide a statement sufficient to put the opposing

party on notice of the claim."  Weston, 251 F.3d at 428; see Evancho, 423 F.3d at 351-353

(surveying the law and rejecting the defense claim that Rule 8 requires heightened pleadings

standards for civil rights cases).

> The marching orders of the Supreme Court in both Leatherman and Swierkiewicz are
> clear: the notice pleading standard of Rule 8(a) applies in all civil actions, unless
> otherwise specified in the Federal Rules or statutory law. There is no federal rule or
> statute that prescribes a heightened pleading standard in § 1983 civil rights actions in
> which the defendant pleads a qualified immunity defense. Hence, we now make clear that
> which was implied in Evancho: a civil rights complaint filed under § 1983 against a
> government official need only satisfy the notice pleading standard of Rule 8(a), regardless
> of the availability of a qualified immunity defense.

Thomas v. Ind. Township, 463 F.3d 285, 295 (3d Cir. 2006).  Once again, notice is the key.

**C.  Rule 12(b)(6) Motion to Dismiss Standards.**  In light of this, defendants clearly have a substantial burden to carry in seeking dismissal of the Complaint under Fed.R.Civ.P. 12(b)(6).  Courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips, 2008 WL 305025, *5.  "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level."  Id. at *6 (internal punctuation omitted).  "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Id.  As the Third Circuit explained, motion to dismiss pleading standards "can be reduced to this proposition: Rule 8(a)(2) has it right."  Id. at *7.

**D.  If a Complaint Fails to State a Claim, the District Court Must Allow Amendment.**  "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  Id. at *17; accord id. at *1.  "Moreover, we have instructed that a district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend."  Id. at *17.  The "court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time."  Id.  As our Circuit recently explained, not doing so is reversible error.  Id. at *18.

**E.  The Rule 12(b)(6) Standard of Review When a Complaint is Silent On Whether a Plaintiff Was Speaking as a Citizen or as an Employee.**  As the Third Circuit has

14

specifically explained in the 12(b)(6) motion to dismiss free speech <u>Garcetti</u> context, when a plaintiff's complaint is silent on whether the employee was speaking pursuant to his official duties, "we read the complaint to allege that [the plaintiff] was speaking 'as a citizen.'" <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 242 (3d Cir. 2006).

**F. Novel Theories of Law Should Not Be Addressed at the Motion to Dismiss Stage.**

As Judge Robinson has explained, "courts should be reluctant to grant a motion to dismiss when the claim in question asserts a novel legal theory of recovery.  Novel theories of recovery are best tested for legal sufficiency in light of actual, rather than alleged facts." <u>Buckhead America Corp. v. Reliance Capital Group, Inc.</u>, 178 B.R. 956, 961 (D.Del. 1994); <u>accord</u> <u>Woodruff v. Hamilton Township Public Schools</u>, 2007 WL 1876491, *5 (D.N.J. June 26, 2007); <u>Branch v. Federal Deposition Insur. Corp.</u>, 825 F.Supp. 384, 397 (D.Mass. 1993).

**II.    PLAINTIFF HAS APPROPRIATELY PLED THE CONDUCT, TIME, PLACE AND PERSONS INVOLVED IN HER CLAIM TO PLACE THE DEFENDANTS ON NOTICE OF THE CLAIMS AGAINST THEM.**

**A. The Core of Operative Facts.**  In defendants' own words, the "Counts asserted in Plaintiff's Amended Complaint are based on the same set of factual allegations."  (OB at 5).  Plaintiff wholeheartedly agrees.  Her claims can be briefly summarized as follows:

> Plaintiff vigorously crusaded in support of her husband's political campaign for public office on a platform of independence and good government against defendants' handpicked candidate, but the campaign was unsuccessful.  With the same zeal, in her capacity as an FOP official, plaintiff forcefully spoke out against defendants' mistreatment of police officers and prosecuted numerous grievances on their behalf.  Her political and union actions angered and antagonized defendants who in retaliation denied her repeated promotions and transfer opportunities.

(¶¶1, 100, 106).  Proving they are on notice of these claims, defendants themselves summarize plaintiff's claims in three paragraphs in their Statement of Facts:

> The first group of alleged [protected] activities occurred in the summer of 2002 during the local primary elections (the "2002 Election"). Plaintiff's husband ran for a seat on the NCC Council ("County Council"). Plaintiff contends that she supported her husband in his campaign efforts.
>
> The second group of alleged activities relate to Plaintiff's involvement with the NCCPD's police officer' union, FOP Lodge 5 ("Lodge 5" or the "Union"). Plaintiff served as the Union's Grievance Representative from March 2001 until March 5, 2002, when she was appointed Chair of the Grievance Committee. At the same time, she was also elected to the Union's Board of Directors.
>
> Plaintiff alleges that, in response to her participation in the 2002 Election and her involvement with the Union, she was denied: (1) promotion to lieutenant; (2) a transfer to the NCCPD's Southern Patrol Unit; (3) leave; and (4) training.

(OB at 5-6). Plaintiff agrees this is a fair summary of her claims as alleged in the Complaint. Accordingly, it is clear that defendants have "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.

**B. The Many Legal Claims That Flow From These Facts.** Although it is not necessary under the standard of review, see Compaq, 2001 WL 789408, *3 ("Rule 8(a)(2) does not require a claimant to set forth any specific legal theory justifying the relief sought on the facts alleged."); Bechtel, 886 F.2d at 649 ("[u]nder the federal rules, as long as the issue is pled, a party does not have to state the exact theory of relief in order to obtain a remedy."), given the sheer number of billable hours and taxpayer dollars that went into crafting the defense opening brief in this time of tight County purse strings, plaintiff will briefly touch upon the wide range of legal theories that may be implicated by the undisputed set of factual allegations at issue in this case.

**1. Political Association.** A public employee's right to be free of retaliation for political association and affiliation is well recognized. See, e.g. Galli v. N.J. Meadowlands

16

*Commission*, 490 F.3d 265, 270-75 (3d Cir. 2007); <u>Navarro v. Coons</u>, 2007 WL 2683824, *6

(D.Del. Sept. 7, 2007).[5]  This theory is neither new nor novel.

**a.  Evidentiary Standards Do Not Apply at the Motion to Dismiss**

**Stage.**  As explained in Argument **I.B.2.** above, a plaintiff is not required to plead the evidentiary

elements of his cause of action.  <u>See Phillips</u>, 2008 WL 305025, *18 ("Standards of pleading are

not the same as standards of proof"); <u>Swierkiewicz</u>, 534 U.S. at 511-12 (a plaintiff need not

plead the elements of a prima facie case); <u>Weston</u>, 251 F.3d at 429 ("[c]omplaints need not plead

law or match facts to every element of a legal theory."); <u>Compaq</u>, 2001 WL 789408, *3  ("the

federal rules do not require the plaintiffs to plead law or match facts to every element of a legal

theory.").  In the same way, a civil rights complaint will withstand 12(b)(6) attack when it states

the conduct, time, place and persons responsible.  <u>See Evancho</u>, 423 F.3d at 353; <u>Boykins</u>, 621

F.2d at 80; <u>Hall</u>, 570 F.2d at 89; <u>Price</u>, 2008 WL 170530, *9.

**b.  The Conduct, Time, Place and Persons Responsible.**  The time

frame and conduct at issue involves denying plaintiff five promotions (from September 2002 -

September 2003) because of her political association with and campaigning on behalf of her

husband from July 2002 until the election in September 2002.  (¶¶ 25-30, 67-68, 125, 116, 45-49,

69, 77).   The place is NCC, Delaware. The persons responsible for all of these actions are

Gordon, Freebery, Cunningham and McAllister. (¶¶ 46, 77, 105, 70-81, 106, 109, 112, 117, 121,

125, 127).  Accordingly, the claim for political association retaliation is adequately pled and

defendants are on notice of the claims against them.

---

[5]  The irony is not lost on plaintiff that the <u>Navarro</u> plaintiff was one of defendant Gordon, Freebery and McAllister's biggest supporters and that he asserted political affiliation protection for the retaliation he experienced after arguing his political mentors were not criminals.  <u>See Navarro</u>, 2007 WL 2683824, *6 (a summary judgment, not motion to dismiss opinion).  History has proven Navarro wrong.  (¶¶ 4-5).

     **2. Union Association.** "[T]he First Amendment protects the right of public employees to join together in a union, to seek redress for grievances through that collective entity, and to be free from retaliation for engaging in such activities." <u>Petrario v. Cutler</u>, 187 F.Supp.2d 26, 31-32 (D.Conn. 2002). The Supreme Court, the Third Circuit and numerous other Courts have long protected the rights of unions and their members against retaliation.[6]  This theory is neither new nor novel.

     **a. Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage.** As explained in Argument **I.B.2.** above, a plaintiff is not required to plead the evidentiary elements of their cause of action.  Instead, a civil rights complaint will withstand 12(b)(6) attack when it states the conduct, time, place and persons responsible.

     **b. The Conduct, Time, Place and Persons Responsible.**  The time frame and conduct at issue involves denying plaintiff five promotions (from September 2002 - September 2003) because of her union association and union activities from March 2001 forward when she served as an FOP Grievance Representative, Chairperson of the Grievance Committee and Executive Board member.  (¶¶ 36-38, 45-49, 69, 77). The place is NCC, Delaware.  The persons responsible for all of these actions are Gordon, Freebery, Cunningham and McAllister.

---

     [6]  <u>See, e.g.</u> <u>Thornhill v. State of Alabama</u>, 310 U.S. 88, 102 (1940) ("the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution."); <u>United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n</u>, 389 U.S. 217 (1967) ("We hold that the freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives [unions] the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights."); <u>United Transp. Union v. State Bar of Mich.</u>, 401 U.S. 576, 585 (1971) ("collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment."); <u>Labov v. Lalley</u>, 809 F.2d 220, 222-223 (3d Cir. 1987) ("efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the first amendment protects from hostile state action." ); <u>Hotel & Restaurant Employees & Bartenders Int'l Union Local 54 v. Read</u>, 832 F.2d 263, 265 (3d Cir. 1987) ("some union activity presumably comes within the right to associate for expressive purposes.").

(¶¶ 46, 77, 105, 70-81, 106, 109, 112, 117, 121, 125, 127).  Accordingly, the claim for union

association retaliation is adequately pled and defendants are on notice of the claims against them.

     **3.  Intimate Association.**  A citizen's right to be free of retaliation for their

intimate associations also is well recognized.  See Pi Lambda Phi Fraternity, Inc. v. Univ. of

Pittsburgh, 229 F.3d 435, 441-42 (3d Cir. 2000); Roberts v. Jaycees, 468 U.S. 609, 617-18

(1984). As the Third Circuit has explained, "[f]amily relationships are the paradigmatic form of

protected intimate associations." Pi Lambda, 229 F.3d at 441.

     **a.  Evidentiary Standards Do Not Apply at the Motion to Dismiss**

**Stage.**  As explained in Argument **I.B.2.** above, a plaintiff is not required to plead the evidentiary

elements of their cause of action.  Instead, a civil rights complaint will withstand 12(b)(6) attack

when it states the conduct, time, place and persons responsible.

     **b.  The Conduct, Time, Place and Persons Responsible.**  The time

frame and conduct at issue involves denying plaintiff five promotions (from September 2002 -

September 2003) because of who her spouse was. (¶¶ 16, 45-49, 69, 77).  The place is NCCPD,

Delaware. The persons responsible for all of these actions are Gordon, Freebery, Cunningham

and McAllister.  (¶¶ 46, 77, 105, 70-81, 106, 109, 112, 117, 121, 125, 127).  Accordingly, the

claim for intimate association retaliation is adequately pled and defendants are on notice of the

claims against them.

     **4.  Free Speech Retaliation.**  A public employee's right to be free of retaliation

for the exercise of their free speech rights is similarly well recognized.  See, e.g. Springer v.

Henry, 435 F.3d 268, 275 (3d Cir. 2006); Hill v. Borough of Kutztown, 455 F.3d 225, 241-42

(3d Cir. 2006).  This theory is neither new nor novel.

     **a.  Evidentiary Standards Do Not Apply at the Motion to Dismiss**

**Stage.**  As explained in Argument **I.B.2.** above, a plaintiff is not required to plead the evidentiary elements of their cause of action.  Instead, a civil rights complaint will withstand 12(b)(6) attack when it states the conduct, time, place and persons responsible.

> **b.  The Conduct, Time, Place and Persons Responsible.**  The time frame and conduct at issue involves denying plaintiff five promotions (from September 2002 - September 2003) because of her speech addressing: her husband's political campaign; mistreatment of county police officers by the administration; and the filing and prosecution of grievances on behalf of FOP members, beginning in the March 2001 forward. (¶¶ 25-30, 36-38, 45-49, 69, 77).  The place is NCC, Delaware.  The persons responsible for all of these actions are Gordon, Freebery, Cunningham and McAllister.  (¶¶ 46, 77, 105, 70-81, 106, 109, 112, 117, 121, 125, 127).  Accordingly, the claim for free speech retaliation is adequately pled and defendants are on notice of the claims against them.[7]

> **5.  Petition Clause Retaliation.**  A public employee's right to be free of

---

[7]  The defense claim that <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006) bars this case is without merit.  As the Third Circuit recently explained, the Garcetti inquiry regarding the scope of an employee's job duties is a "fact-intensive ... inquiry."  <u>Foraker v. Chaffinch</u>, 501 F.3d 231, 240 (3d Cir. 2007).  First, it is explicitly pled that none of plaintiff's speech and other First Amendment activity was required by her job duties as a Patrol Supervisor.  (¶¶ 100-101).  Second, and more importantly, plaintiff's job duties as a Patrol Supervisor were specifically pled and listed in the Complaint.  (¶ 43).  None of the duties encompassed political campaigning, voting or union activity.  Lastly, the courts have unfailingly held that union activities are not part of a public employee's job duties for <u>Garcetti</u> purposes.  <u>See</u> <u>Fuerst v. Clarke</u>, 454 F.3d 770, 774 (7th Cir. 2006) (deputy sheriff's speech in his capacity as a union official which criticized the management decisions of the sheriff not part of his job duties); <u>Shefcik v. Village of Calumet Park</u>, 2007 WL 3334329, *4-5 (N.D.Ill. Nov. 7, 2007) (rejecting the defense claim that the actions of a union official who filed 50 grievances on behalf of union members were part of his job duties as a police officer and holding that "a public employee who makes a statement in his capacity as a union representative is speaking as a citizen, not as an employee"); <u>Nagle v. Village of Calumet Park</u>, 2006 WL 3797726, *5 n.2 (N.D.Ill. Dec. 18, 2006) (rejecting the claim that a union official who filed over 100 union grievances for union members was required to do so by his job duties as a police officer).

retaliation for exercising their petition clause rights is similarly well recognized.  See, e.g.

San Filippo v. Bongiovanni, 30 F.3d 424, 435-43 (3d Cir. 1994); Foraker v. Chaffinch, 501 F.3d

231, 234-38 (3d Cir. 2007).[8]

      **a.  Evidentiary Standards Do Not Apply at the Motion to Dismiss**

**Stage.**  As explained in Argument **I.B.2.** above, a plaintiff is not required to plead the evidentiary

elements of their cause of action.  Instead, a civil rights complaint will withstand 12(b)(6) attack

when it states the conduct, time, place and persons responsible.

      **b.  The Conduct, Time, Place and Persons Responsible.**  The time

frame and conduct at issue involves denying plaintiff five promotions (from September 2002 -

September 2003) because she prosecuted union grievances as part of the formal grievance

process on behalf of union members from 2001 forward.  (¶¶ 36-38, 45-49, 69, 77). The place is

NCC, Delaware.  The persons responsible for all of these actions are Gordon, Freebery,

Cunningham and McAllister.  (¶¶ 46, 77, 105, 70-81, 106, 109, 112, 117, 121, 125, 127).

Accordingly, the claim for petition clause retaliation is adequately pled and defendants are on

notice of the claims against them.

      **6.  Right to Vote.**  A citizen's right to exercise their fundamental rights under the

U.S. Constitution is well recognized in the case law.  The right to vote is a fundamental right.

See Burson v. Freeman, 504 U.S. 191, 198-99 (1992); Massachusetts Bd. of Retirement v.

Murgia, 427 U.S. 307, 312 n.3  (1976)  Reynolds v. Sims, 377 U.S. 533, 554-55 (1964);

Wellford v. Battaglia, 343 F.Supp. 143, 149 (D.Del. 1972).  State action which impinges upon

---

    [8]  To the extent defendants believe this to be a novel legal theory, as Judge Robinson has
explained, it should not be decided on a motion to dismiss and instead should await a fully
developed fact record.  See Buckhead, 178 B.R. at 961; accord Woodruff, 2007 WL 1876491,
*5; Branch, 825 F.Supp. at 397.

fundamental rights receives strict scrutiny analysis under the Fourteenth Amendment.  See, e.g.

Murgia, 427 U.S. at 312; Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001).[9]

       **a.  Evidentiary Standards Do Not Apply at the Motion to Dismiss**

**Stage.**  As explained in Argument **I.B.2.** above, a plaintiff is not required to plead the evidentiary

elements of their cause of action.  Instead, a civil rights complaint will withstand 12(b)(6) attack

when it states the conduct, time, place and persons responsible.

       **b.  The Conduct, Time, Place and Persons Responsible.**  The time

frame and conduct at issue involves denying plaintiff five promotions (from September 2002 -

September 2003) because of the exercise of her fundamental right to vote during the September

2002 election.  (¶¶ 30, 45-49, 69, 77).  The place is the NCC, Delaware.  The persons responsible

for all of these actions are Gordon, Freebery, Cunningham and McAllister responsible for some,

but not all of them.  (¶¶ 46, 77, 105, 70-81, 106, 109, 112, 117, 121, 125, 127).  Accordingly, the

claim for infringement on plaintiff's fundamental right to vote is adequately pled and defendants

are on notice of the claims against them.

## III.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

       Defendants also assert that they are entitled to qualified immunity because they claim it

was not clearly established that they could not engage in a continuing campaign of retaliation

against plaintiff for her speech, her campaigning in opposition to their stooge Council candidate,

and her union related and other protected activity.  As discussed below, they are mistaken.

       **A.  Introduction.**  Qualified immunity is a two part inquiry.  Atkinson v. Taylor, 316

---

[9]  To the extent defendants believe this to be a novel legal theory, as Judge Robinson has explained, it should not be decided on a motion to dismiss and instead should await a fully developed fact record.  See Buckhead, 178 B.R. at 961; accord Woodruff, 2007 WL 1876491, *5; Branch, 825 F.Supp. at 397.

F.3d 257, 261 (3d Cir. 2003).  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendants'] conduct violated a constitutional right?"  Id. Next, the court must next decide whether the right allegedly violated was a clearly established one.  Wilson v. Layne, 526 U.S. 603, 609 (1999).

**B.  The Facts Show that Defendants Violated Plaintiff's Constitutional Rights.**  As explained in Argument II above, the facts as alleged in the Complaint are sufficient to survive the defense motion to dismiss.  Accordingly, plaintiff has properly alleged that defendants violated her constitutional rights.

**C.  Plaintiff's Rights Were Clearly Established.**  "Once it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established."  Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002) ("Bennett I").

> That is, *in the factual scenario established by the plaintiff*, would a reasonable officer have understood that his actions were prohibited.  *The focus in this step is solely upon the law*.  If it would not have been clear to a reasonable officer what the law required *under the facts alleged*, he is entitled to qualified immunity.  If the requirements of the law would have been clear, the officer must stand trial.

Id. at 136-37 (emphasis added)); accord Bennett v. Murphy, 120 Fed.Appx. 914, 916-17(3d Cir. 2005) (Bennett II); Wright v. City of Phila., 409 F.3d 595, 600 (3d Cir. 2005); Saucier v. Katz, 533 U.S. 194, 201 (2001).  Defendants simply ignore this aspect of the law which analyzes the factual scenario alleged by plaintiff, not one wished for by defendants.

The prong two question becomes would a reasonable public official be put on notice that the constitutional violation already established under prong one runs afoul of clearly established

law.[10]

If there was any doubt on what is needed to put a reasonable public official on notice of clearly established law, the short answer is found in the U.S. Supreme Court case of Hope v. Pelzer, 536 U.S. 730 (2002).  Hope held that "officials can still be on notice that their conduct violates established law even in *novel factual circumstances*."  Id. at 741 (emphasis added).  The Supreme Court unanimously agreed on this issue.  Id. at 753-54 (Thomas, J. dissenting with whom Rehnquist, C.J. and Scalia, J. join) (agreeing that "officials can still be put on notice that their conduct violates established law even in novel factual circumstances").  This holding is in accord with a plethora of preexisting Third Circuit and Supreme Court law, discussed in much greater length below, and puts to rest in our present case any conceivable uncertainty regarding the level of factual correspondence needed between the right asserted and prior cases.

Even prior to the Hope decision, the law was the same as is demonstrated by many other Third Circuit and Supreme Court opinions.  "[Q]ualified immunity applies if 'reasonable officials in the defendants' position at the relevant time could have believed, *in light of what was in the decided case law*, that their conduct would be lawful.'"  Doe v. Delie, 257 F.3d 309, 318 (3d Cir. 2001) (emphasis added) (quoting Good v. Dauphin County, 891 F.2d 1087, 1092 (3d Cir. 1989)).  Continuing -

_____

[10]  The reasonableness of an official's conduct is not a separate question from whether the law was clearly established.  Instead, these are two sides of the same coin.  The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  This is because "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  Crawford-El v. Britton, 523 U.S. 574, 591 (1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982)).  In other words, the law presumes that reasonably competent public officials are aware of clearly established law.  Thus if the law is clearly established, a reasonably competent public official would have known of it.  Id.

> Thus, having determined that Doe has alleged a violation of a constitutional right, we must determine whether Doe's right [ ] was "clearly established" in a "particularized" sense. Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. *We do not require precise factual correspondence between the right asserted and prior case law.* Good, 891 F.2d at 1092. Whether an official may be protected by qualified immunity turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal quotes omitted). The issue is whether, given the established law and the information available to Defendants, reasonable [] officials in Defendants' positions could have believed that their conduct was lawful. See Paff v. Kaltenback, 204 F.3d 425, 431 (3d Cir. 2000).

Doe, 257 F.3d at 318 (emphasis added). The Third Circuit also has explained that the "clearly established" language test requires "some but not precise factual correspondence and [demands] that officials apply general, well-developed legal principles." Bennis v. Gable, 823 F.2d 723, 733 (3d Cir. 1987); see also Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989) ("the general legal principles governing analogous factual situations, if any, and a subsequent determination whether the official should have related this established law to instant situations" are the basis for the court's inquiry); accord Hicks v. Finney, 770 F.2d 375, 380 (3d Cir. 1985).[11] The Supreme Court in U.S. v. Lanier, 520 U.S. 259, 271 (1997), also stated that a "general constitutional rule already identified in the decisional law" may give fair warning to a public official if the rule applies "[w]ith obvious clarity to the specific conduct in question" even though the specific issue has not been previously addressed. Finally, in the Third Circuit, a law may be

---

[11] Additionally as indicated by the Supreme Court, all that is required to defeat a qualified immunity claim is a "consensus of cases of persuasive authority." Wilson, 526 U.S. at 604. Note that this says nothing of a consensus of binding authority. This is the point made as far back as 1989 by the Third Circuit in Good, 891 F.2d at 1092, that precise factual correspondence is not needed between the right asserted and prior cases. "A right may be clearly established even if there is no 'previous precedent directly in point.'" Leveto v. Lapina, 258 F.3d 156, 162 (3d Cir. 2001)(quoting Good, 891 F.2d at 1092); see also Assaf v. Fields, 178 F.3d 170, 177 (3d Cir. 1999). This point was reiterated again by the Third Circuit in 1999, that a court need not have ruled on a case bearing a "precise factual correspondence" with the one under consideration. Assaf, 178 F.3d at 177.

clearly established even if the Court has not ruled on an issue and even if there is some disagreement among other Circuits, as long as "[n]o gaping divide has emerged in the jurisprudence" which would lead a party to "reasonably expect" the Courts in this Circuit to rule other than one way. Bieregu v. Reno, 59 F.3d 1445, 1459 (3d Cir. 1995) (overruled on other grounds by Lewis v. Casey, 518 U.S. 343 (1996)).

Thus, government officials will not be granted immunity if they fail to make obvious inferences from a generally established right and apply the right in particular situations. So it was unreasonable in our case for defendants to believe that they could, for example, maliciously retaliate against plaintiff because she had dared to oppose their anointed political candidate in their plot to corrupt the legislative body of New Castle County. Do defendants believe they operate in Soviet Russia or Communist China where elections are normally rigged as a matter of course and opponents can be silenced? "There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [ ] liability." U.S. v. Lanier, 520 U.S. at 271 (internal punctuation omitted).

**1. Political Association.** There is an abundance of case law demonstrating that a public employee has a clearly established First Amendment right not to be retaliated against because of his political beliefs and political party support.[12] Particularly helpful is the case of Bennis v. Gable, 823 F.2d 723 (3d Cir. 1987). There, two police officers claimed they were demoted by the police chief in retaliation for their support of the losing candidate in a mayoral

---

[12] See, e.g. Elrod v. Burns, 427 U.S. 347 (1976); Branti v. Finkel, 445 U.S. 507 (1980); Rutan v. Republican Party of Ill., 497 U.S. 62 (1990); Goodman v. Pa. Turnpike Commission, 293 F.3d 655 (3d Cir. 2002); Galli v. N.J. Meadowlands Commission, 490 F.3d 265 (3d Cir. 2007).

election.  Id. at 725-26.  In the subsequent lawsuit the mayor and police chief claimed qualified

immunity, which was quickly rejected by the Third Circuit.  The Court explained that

> we cannot in good conscience, conclude that in 1982 a reasonably active politician would
> not have believed that it would be impermissible to demote an employee in retaliation for
> his political speech and/or associations.

Bennis, 823 F.2d at 733.  As the Third Circuit explained, it was clearly established in 1982 that a

public official could not punish a police officer for backing the losing candidate in a local

election.  Id.[13]  Accordingly, defendants cannot claim lack of notice of this clearly established law

and all their arguments fail.[14]  They must undergo discovery and stand trial for their corrupt

actions.  It matters not whether any of the other legal theories supporting plaintiff's claim are

clearly established.  Defendants must stand trial because just this one legal theory was clearly

established.[15]

---

[13]  To the extent defendants claim they were aware of Bennis, but thought that they could
still retaliate with impunity against fellow Democrats such as plaintiff as long as they were kind
to Republicans, such a hollow claim is particularly unpersuasive in light of Robertson v. Fiore,
62 F.3d 596, 601 (3d Cir. 1995) (holding that "the Constitution ... protects a Democratic
employee equally from discharge for supporting a losing Democrat as for supporting a losing
Republican.").

[14]  Bennis also disposes of the defense claim that political association claims may only be
brought against the person seeking public office and no one else.  (OB at 23-25).  In Bennis, 823
F.2d at 725, one of the defendants was the police chief (who had not run for public office).  As
review of that opinion makes clear, the Third Circuit had no problem with this.  Unfortunately
for defendants, we are in the Third Circuit which is much more friendly to civil rights claims
than the Fourth Circuit, upon whose precedent the defense solely relies for this discredited
proposition.

[15]  Additionally, as the Third Circuit has explained in the First Amendment context, if
defendants acted with an intent to stifle plaintiff's First Amendment rights, qualified immunity
must be denied because "it can never be objectively reasonable for a government official to act
with the intent that is prohibited by law."  Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d
Cir. 2006).  Similar to the wrongdoing public official in Monteiro who was "motivated by anger
and personal animosity" id. at 405, our record reveals that defendants also were similarly
motivated by both anger and antagonism.  (¶¶ 29-30, 67-68, 30, 104, 116, 125).  Thus, qualified
immunity must be denied because "it can never be objectively reasonable for a government

      **2. Union Association.** However, all plaintiff's other legal theories have been clearly established also. For example, in the same way, plaintiff's right to be free of retaliation for associating with a union and advocating for and advising members of their legal rights has been clearly established for an even longer period of time.

      The Supreme Court itself has repeatedly addressed the rights of workers, their unions and their officers to speak, associate and petition to the fullest extent of the First Amendment. For example, in <u>Brotherhood of R. R. Trainmen v. Virginia ex rel. Va. State Bar</u>, 377 U.S. 1, 5 (1964), the Supreme Court struck down state efforts to bar that union from advising its members of their legal rights as violative of the First Amendment. Then, in <u>United Transp. Union v. State Bar of Mich.</u>, 401 U.S. 576, 578 (1971), the Supreme Court again explained that "the First Amendment guarantees of free speech, petition, and assembly give [union members] the right to cooperate in helping and advising one another in asserting their rights." Eight years later, in <u>Smith v. Arkansas State Highway Emp., Local 1315</u>, 441 U.S. 463, 464-65 (1979), again in the union context, the Supreme Court explained that "public employees surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so."

      The lower courts have followed the Supreme Court's lead in this regard. <u>See, e.g.</u> <u>Labov</u>, 809 F.2d at 222-223 ("efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the first amendment protects from hostile state action."); <u>Clue v. Johnson</u>, 179 F.3d 57, 60 (2d Cir.1999) ("[t]here is no doubt that retaliation against public employees solely for their union activities violates the First

--------

official to act with the intent that is prohibited by law." <u>Id.</u> at 404.

Amendment."); <u>Stellmaker v. DePetrillo</u>, 710 F.Supp. 891, 892 (D.Conn.1989) ( "[T]he state may not abridge the right of public employees to associate in a labor union and to seek redress of grievances through collective action, nor may it retaliate against an employee for doing so." ). Accordingly, defendants cannot now claim to have been unaware of plaintiff's clearly established rights to be free of retaliation for associating with and advocating on behalf of her fellow union members.

      **3. Intimate Association.** Continuing, an individual's right to be free of retaliation because of her intimate associations is equally well established. See <u>Roberts v. Jaycees</u>, 468 U.S. 609, 617-19 (1984); <u>Bd. Directors of Rotary International v. Rotary Club of Duarte</u>, 481 U.S. 537, 544-45 (1987). Fifteen years ago, the Sixth Circuit held that the right of a public employee to be free of retaliation because of her intimate associations with her spouse was clearly established. <u>Adkins v. Bd. of Educ. of Magoffin County, Kentucky</u>, 982 F.2d 952 (6th Cir. 1993). The Second Circuit also has recognized a spouse's intimate associative rights against retaliation in the public employment context. <u>Adler v. Pataki</u>, 185 F.3d 35, 44 (2d Cir. 1999). Accordingly, it is clear that this right also was clearly established in 2002.

      **4. Free Speech Retaliation.** Since <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563 (1968), the Supreme Court, Third Circuit and District of Delaware have all made clear that public employees do not surrender their free speech rights by virtue of their public employment.[16]

---

    [16] Unfortunately, for defendants <u>McAuliffe v. City of New Bedford</u>, 29 N.E. 517 (Mass. 1892) has long since been overruled. See <u>O'Hare Truck Service, Inc. v. City of Northlake</u>, 518 U.S. 712, 716 (1996) (noting that the Supreme Court has for decades rejected Justice Holmes' then famous aphorism that a policeman "may have a constitutional right to talk politics, but he has no constitutional right to be a policeman."). As the Seventh Circuit has explained, "freedom of speech is not traded for an officer's badge." <u>Biggs v. Village of Dupo</u>, 892 F.2d 1298, 1303 (7th Cir. 1990). The Supreme Court has noted the same - "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights." <u>Garrity v. New Jersey</u>, 385 U.S. 493, 500 (1967).

In 1988, citing one of the same political patronage cases discussed in the political association section above, the Third Circuit held that it has been clearly established since 1982 that a public employee cannot be retaliated against for exercising his First Amendment rights.  Zamboni v. Stamler, 847 F.2d 73, 80 n.7 (3d Cir. 1988) (quoting Bennis, 823 F.2d at 733); accord Baldassare v. State of N.J., 250 F.3d 188, 201 (3d Cir. 2001) (noting the same in the law enforcement context).

Given that plaintiff's protected speech encompassed the same political and union expression which were discussed at length in Argument **III.C.I. and C.2.** above, plaintiff also relies upon the clearly established First Amendment law cited therein and incorporates it by reference here.[17]  This right was clearly established as well.[18]

    **5.  Petition Clause Retaliation.**  In the same way, the right to petition has been clearly established for even longer than its better known cousin, the free speech clause.  A citizen's right to petition the government was part of the Magna Carta and also was such a well-recognized part of the law that it was included in Blackstone's famous works.  San Filippo v. Bongiovanni, 30 F.3d 424, 443 and n. 22-23 (3d Cir. 1994).  In the U.S., the right to petition the

---

[17]  See, e.g. Bennis, 823 F.2d at 733 ("we cannot in good conscience, conclude that in 1982 a reasonably active politician would not have believed that it would be impermissible to demote an employee in retaliation for his political speech and/or associations.")

[18]  The defense claim that there can be no clearly established public employee free speech law in light of Garcetti is remarkably similar to a claim Judge Sleet has repeatedly rejected - that there can be no clearly established public employee free speech law in light of Pickering  v. Bd. of Educ., 391 U.S. 563 (1968).  As Judge Sleet explained, "[i]f the court were to accept the defendants' position, qualified immunity could never ben denied in First Amendment retaliation cases.  This is an extreme result ... one that this court will not sanction."  Springer v. Henry, 2002 WL 389136, * 7 (D.Del. March 11, 2002); Springer v. Henry, 2004 WL 2127172, *6 n.9 (D.Del. Sept. 16, 2004).

government has been clearly established under decades of Supreme Court precedent.[19]  Similarly, the Third Circuit has repeatedly and exhaustively discussed the right of a public employee to petition the government for redress of grievances, including by invoking formal grievance mechanisms as part of collective bargaining agreements.[20]

Given that plaintiff's protected petitioning encompassed the same union expression which was discussed at length in Argument **III.C.2.** above, plaintiff relies upon the clearly established First Amendment law cited therein and incorporates it by reference here.[21]  This right was clearly established as well.

**6. Right to Vote.**  As discussed above, it has long been clearly established that state action which impinges upon fundamental rights receives strict scrutiny analysis under the Fourteenth Amendment.  See, e.g. Murgia, 427 U.S. at 312; Abdul-Akbar, 239 F.3d at 317.  As the Supreme Court has explained -

> no right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined.

Williams v. Rhodes, 393 U.S. 23, 31 (1968).  Although there may not be as wide a body of case law addressing the fundamental right to vote as there is, for example, in the First Amendment

---

[19]  See e.g., NAACP v. Button, 371 U.S. 415, 429-30 (1963); Bhd. of R.R. Trainmen v. Va. Ex Rel. Va. State Bar, 377 U.S. 1, 5 (1964); United Mine Workers of America v. Ill. State Bar Ass'n, 389 U.S. 217, 221-225 (1967); Cal. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510-16 (1972); McDonald v. Smith, 472 U.S. 479, 482-85 (1985)

[20]  See San Filippo, 30 F.3d at 434-43 (formal union grievance); Anderson v. Davila, 125 F.3d 148, 161-63 (3d Cir. 1997) (lawsuit and EEOC charge); Hill v. City of Scranton, 411 F.3d 118, 126-27 (3d Cir. 2005) (lawsuit).

[21]  See, e.g. Stellmaker, 710 F.Supp. at 892 ( "[T]he state may not abridge the right of public employees to associate in a labor union and to seek redress of grievances through collective action, nor may it retaliate against an employee for doing so." ).

arena in recent years, the courts regularly address state infringement upon other fundamental rights. See, e.g. Jones v. Helms, 452 U.S. 412 (1981) (fundamental right of interstate travel); Lawrence v. Texas, 539 U.S. 558 (2003) (fundamental right of privacy). Given the treatment and protection received by these lesser fundamental rights, it is clearly established that a more important, indeed the greatest right, would receive similar protections. As the Court stated in U.S. v. Lanier, "[t]here has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [ ] liability." 520 U.S. at 271 (internal punctuation omitted).

## CONCLUSION

Through an onslaught of confusing and misleading factual and legal assertions, the defendants would have this Court misstate the law governing motions to dismiss, notice pleading and qualified immunity in the hope that they can avoid their day of reckoning in Court for their misuse of governmental power to punish plaintiff, who opposed their corrupt schemes for a local legislative body and their mistreatment of brave police officers. The defense arguments are totally without merit and are frivolous. Their motion should be denied.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
**CHERYL A. HERTZOG, ESQ.**
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
CherylH@NeubergerLaw.com

32

**MARTIN D. HAVERLY, ESQ. (#3295)**
**MARTIN D. HAVERLY, ATTORNEY AT LAW**
Two East Seventh Street, Suite 201
Wilmington, DE 19801
(302) 654-2255
Dated: February 7, 2008       Martin@HaverlyLaw.com

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

February 7, 2008, I electronically filed this Pleading with the Clerk of the Court using CM/ECF

which will send notification of such filing to the following:

William W. Bowser, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

Charles E. Butler, Esq.
1224 North King Street
Wilmington, DE 19801

Kathleen M. Jennings, Esq.
Oberly Jennings and Rhodunda, P.A.
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, DE 19899

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ.**

/ Riddell / Briefs / Motion to Dismiss AB.final