# Young Conaway Stargatt & Taylor, llp

Margaret M. DiBianca
Direct Dial:  (302) 571-5008
Direct fax:   (302) 576-3476
mdibianca@ycst.com

The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware 19899-0391

(302) 571-6600
(302) 571-1253 fax
(800) 253-2234 (DE Only)
www.youngconaway.com

February 15, 2008

**BY CM-ECF**

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Lock Box 8
Wilmington, DE 19801

      Re:   *Riddell v. Gordon, et al.*
              C.A. No. 04-1201

Dear Judge Thynge:

     This letter is submitted on behalf of all defendants in the above-referenced matter. Defendants submitted a motion and accompanying brief requesting dismissal pursuant to Rule 12(b)(6) on January 7, 2008. Plaintiff filed her answering brief on February 7, 2008. Defendants' reply brief is due to be filed on or before February 21, 2008.

     To better frame the complex issues and to focus the analysis on the most essential points and authorities, Your Honor instructed the parties to submit, in letter form, a list of the cases they believe best support their arguments. This is Defendants' letter in compliance with that request. The representative cases are set out below in corresponding order with the headings in Defendants' Opening Brief in Support of Their Motion to Dismiss.

## Sufficiency of the Allegations

The plaintiff-police officer in <u>Jones v. Delaware State Police</u>,[1] brought suit against Aaron Chaffinch, the former police Superintendent, and M. Jane Brady, the former attorney general. The complaint made no substantive reference to any allegation against either defendant. Citing the Third Circuit's standard for civil rights cases in a 12(b)(6) analysis, Judge Jordan reiterated the need for the plaintiff to state the conduct, time, place and persons responsible for the alleged civil rights violations. The court then dismissed the complaint for its failure to adhere to these minimum standards, noting that there was nothing in the complaint to indicate that either defendant was the "driving force" behind the alleged violations.

---

[1] No. 02-1637-KAJ, 2006 U.S. Dist. LEXIS 46944 (D. Del. July 11, 2006).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Mary Pat Thynge
February 15, 2008
Page 2

A similar decision was issued by now Chief Judge Sleet in September 2006. The plaintiff in Joynes v. Meconi,[2] failed to allege the personal involvement of each defendant in each alleged wrongdoing. Simply naming them in the complaint, without tying them to specific factual allegations for which liability could be imposed, did not withstand a motion to dismiss.

### Political Speech and Association

In Guarnieri v. Duryea Borough,[3] the plaintiff-police officer alleged that he engaged in speech relating to "Police and Union matters" upon his reinstatement with defendant-police department. The court dismissed the retaliation claim, finding that the plaintiff had failed to present evidence regarding the content, form, or context of the speech. There was no allegation made regarding when the speech occurred, the forum where the speech occurred, the recipients of the speech, or the specific content of the speech. Here, Plaintiff has simply alleged that she "spoke out about the desirability of her husband to hold a seat on County Council" and "spoke out about the mistreatment of NCC police officers by the Administration."

### Union Speech, Association and Petition

In the July 2007 decision of Van Campernolle v. City of Zeeland,[4] the Sixth Circuit rejected the plaintiff's claim that he engaged in constitutionally protected activity when he "assisted" other officers with their grievances and often spoke to management regarding employment issues. The court held that such grievances were "purely personal in nature" and not a matter of public concern. Further, the plaintiff failed to provide any information about the purpose, content, or intent of his speech. The fact that these issues were shared by officers other than the plaintiff did not transform the matters to the realm of public concern.

In Weintraub v. Board of Education of the City of New York,[5] the plaintiff-teacher filed several grievances with his union relating to a disagreement he had with the school principal about one of his students. After reviewing the post-Garcetti case law, the court held that the employee's petition (i.e., his grievance) was made in his capacity as an employee, not as a citizen. By using the grievance mechanism, plaintiff was proceeding through the established official channels seeking remedy for unsatisfactory working conditions. A public employee's speech requesting resolution of an employment-related problem, made through the channels provided by the public employer, is employee-made speech, unprotected by the First Amendment.

---

[2] No. 05-332-GMS, 2006 U.S. Dist. LEXIS 71296 (D. Del. Sept. 30, 2006).

[3] No. 05-1422, 2007 U.S. Dist. LEXIS 84580 (M.D. Pa. Nov. 15, 2007).

[4] No. 06-1904, 2007 U.S. App. LEXIS 16735 (6th Cir. July 9, 2007).

[5] 489 F. Supp. 2d 209 (E.D.N.Y. 2007).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Mary Pat Thynge
February 15, 2008
Page 3

### Expressive Political Association

In Smith v. Frye,[6] the plaintiff-public employee's son ran for political office. The plaintiff's boss supported her son's political opponent. The plaintiff claimed that she was terminated in retaliation as a result of her son's campaign efforts. Here, Plaintiff Riddell claims that her husband ran for office. She claims that her "bosses'," the Individual Defendants, supported her husband's political opponent. She claims that she was not promoted as a result of her husband's campaign efforts.

In Smith, the court held that the plaintiff's allegations were too attenuated to support a claim under the First Amendment. The facts of the case did not fit into one of the two typical archetypes. Smith was not terminated by her son's opponent as is the normal "victory house-cleaning" dismissal where a newly seated official terminates the incumbent employees and replaces them with his own supporters. Nor was she actively associated with a political party *and* terminated by her son's opponent. To permit Smith's claim to proceed, the court would be required to infer that the plaintiff's boss was acting on behalf of the son's opponent by effectuating some hardship on Smith. This leap-frog style of legal analysis was "not an inferential leap" contemplated by the Association clause.

### Intimate Association

Plaintiff, in her answering brief, alleges for the first time a claim of intimate association. This last minute change is effective only for semantics. The legal impact is nil—her claims are still analyzed under the traditional First Amendment rubric. The factual allegations underlying Plaintiff's freedom-of-association claim are essentially no different from those underlying her free-speech claim—both are based on her alleged "support" of her husband during his campaign for office. The Fifth Circuit case Burge v. Pearl River County,[7] provides guidance on precisely this issue. Where the plaintiff's allegations for her speech and associational claims are factually indifferent, the court will apply a free-speech analysis. And, as the court went on to explain, as of its decision in July 2004, there was no decisional authority that could suggest that the defendant violated a "clearly established right" of the plaintiff to associate with her husband. Thus, the qualified immunity analysis also requires dismissal of this claim.

Further, a requisite element of a marital association claim is the allegation and proof of a specific intent to deprive the plaintiff of her marital relationship. Plaintiff's Complaint makes no such allegation. Indeed, no where in the Complaint is there an allegation that any claimed acts, however intentional, occurred with the specific intent to deprive Plaintiff of her right to association with her husband.[8]

---

[6] 488 F.3d 263 (4th Cir. 2007).

[7] 103 Fed. Appx. 823 (5th Cir. 2004).

[8] See Torres v. Pueblo Bd. of Comm'r, No. 98-1412, 200 U.S. App. LEXIS 23593 (10th Cir. 2000).

Young Conaway Stargatt & Taylor, llp
The Honorable Mary Pat Thynge
February 15, 2008
Page 4

### Right to Vote

Despite several requests by Defendants, Plaintiff has never provided any case law to support her so-called Right-to-Vote claim.  Further, Plaintiff actually admits that she did exercise her right to vote in 2002 and does not claim that, since then, she has ever been "denied or abridged" that right.  Further, she has failed to identify any applicable statutory source for her claim.  Instead of relying on the Voter's Rights Act, under which her claim would surely fail, she simply relies on three constitutional amendments as the basis for her claim.  Without even a single case to support her claim, it is difficult to conceive what exactly Defendants should attempt to rebut.

### Equal Protection Claims

Plaintiff apparently has conceded Counts V and VI of her complaint in which she asserted Equal Protection claims.  Plaintiff makes no response at all to the arguments made by Defendants in their Opening Brief against such claims.

### Qualified Immunity

The Third Circuit's explanation of the qualified-immunity analysis in McKee v. Hart[9] is particularly helpful.  There, the court explained that the plaintiff has the burden to proffer evidence that there was "sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited."  The court also highlighted the need to "emphasize that this [clearly established] inquiry must be undertaken *in light of the specific context of the case*, not as a broad, general proposition."  Thus, the plaintiff must point to a consensus of cases from within the Circuit that address the disputed rights with sufficient specificity and factual similarity to the present case.

Further, the Third Circuit has held that non-binding precedent does not make a right "clearly established."  Neither the case law of other circuits nor state law decision can settle the law in this circuit to the point of it being "clearly established.[10]

Respectfully submitted,

Margaret M. DiBianca (No. 4539)

MMD:sec
Enclosures

---

[9] 436 F.3d 165 (3d Cir. 2006).

[10] See, e.g., Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001) (internal citations omitted).